**Affirmed as Modified and Opinion filed November 8, 2016.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-15-00491-CV
_____

### HOUSTON LAUREATE ASSOCIATES, LTD., Appellant

### V.

### MAROLYN RUSSELL, JOEL GOFFMAN, M.D., AND PARK LAUREATE PLACE HOMEOWNERS' ASSOCIATION, Appellees

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-34999**

## O P I N I O N

In this suit for breach of an easement agreement, defendant landowner Houston Laureate Associates, Ltd. ("Houston Laureate") appeals from the judgment and permanent injunction rendered in favor of neighboring homeowners Marolyn Russell and Joel Goffman and Park Laureate Place Homeowners' Association ("the Association"). Houston Laureate asserts that Russell and Goffman lack standing to pursue their claims; contends that the trial court erred in

granting three motions for partial summary judgment and in denying a motion for new trial; and challenges each of the six categories of acts that the trial court permanently enjoined it from performing. Although we conclude that the trial court ruled correctly in most of the challenged instances, we hold that a partial summary judgment on the question of attorney's fees was overly broad and that one category of injunctive relief is too vague to be enforceable. We accordingly reform the judgment and permanent injunction to remedy these errors, and affirm the judgment as modified.

## I. BACKGROUND

Houston Laureate owns an office building and some of the surrounding land. Houston Laureate's neighbor is residential development Park Laureate Place ("the Residential Land"). When the Residential Land was being developed, its then-owner Laureate Associates, Ltd. ("the Residential Landowner") entered into a Recreational Easement Agreement ("the Agreement") with Houston Laureate. In the Agreement, Houston Laureate granted the Residential Landowner a permanent, nonexclusive easement to use part of Houston Laureate's land for recreational purposes. The Agreement refers to this part of Houston Laureate's property as "the Recreational Land," and it includes an exercise facility and a green belt traversed by asphalt walking paths.

The Agreement also mandated that, before any of the individual lots of the Residential Land were sold, the Residential Landowner had to establish a homeowners' association and assign to it the Residential Landowner's rights under the Agreement. The Residential Landowner did establish the Association and assign its rights in the Agreement to it, and homes built on the Residential Land were purchased by homeowners Marolyn Russell and Dr. Joel Goffman. We refer to Russell, Goffman, and the Association collectively as "the Residents."

2

Disputes arose between Houston Laureate and the Residents concerning the use of the Recreational Land. Russell sued Houston Laureate and sought injunctive relief; Goffman and the Association intervened and asserted further claims against Houston Laureate.[1] In particular, the Residents alleged that Houston Laureate violated the Agreement by (a) charging a licensing fee to independent fitness instructors hired by individual homeowners to supervise their personal exercise programs, and (b) enacting a rule requiring anyone using the Recreational Land to remain on the asphalt walking paths at all times.

During the course of the litigation, Houston Laureate began charging its attorney's fees to the Association and requiring the Association to collect the fees from the homeowners. When the Association refused to do so, Houston Laureate suspended the homeowners' rights to use the Recreational Land and informed the Association that if any homeowner used the Recreational Land, Houston Laureate would contact the authorities and report the homeowner as a trespasser. The Residents responded by seeking injunctive relief regarding these matters as well. Houston Laureate requested a jury trial on all of these contested issues.

The trial court issued a temporary injunction to return the parties to the status quo; denied Houston Laureate's motion for partial summary judgment challenging Russell's and Goffman's standing; and granted the Residents partial summary judgments on their claims challenging the licensing fees, the asphalt-path rule, and the imposition of attorney's fees. After an evidentiary hearing, the trial court extended the temporary injunction, and the parties moved for entry of judgment and permanent injunction so they could proceed with this appeal of those rulings and of the underlying partial summary-judgment rulings. The trial court

---

[1] Under the terms of the parties' Rule 11 agreement, any relief granted to a Resident by the trial court is treated as though the relief were requested by, and granted to, all of the Residents. We follow the same convention where it is possible to do so.

rendered a final judgment that incorporated its prior rulings and included a permanent injunction.

## II. ISSUES PRESENTED

In six issues, Houston Laureate argues that the trial court erred in

- denying Houston Laureate's motion for partial summary judgment on its asserted ground that Russell and Goffman lack standing to assert their claims;

- granting the Residents' motion for partial summary judgment on their claim that Houston Laureate breached the Agreement by charging independent fitness instructors retained by the homeowners a licensing fee for the use of the Recreational Land's exercise facility;

- granting the Residents partial summary judgment on their claim that Houston Laureate breached the Agreement by requiring anyone using the Recreational Land to remain on the asphalt paths at all times;

- granting the Residents partial summary judgment holding that the Agreement's indemnification provision does not authorize Houston Laureate to charge the attorney's fees it incurred in this litigation to the Association;

- granting the Residents partial summary judgment holding that the Agreement's "operation expenses" provision does not authorize Houston Laureate to charge a portion of the attorney's fees it incurred in this litigation to the Association; and

- granting the Residents final permanent injunctive relief that, according to Houston Laureate, (a) relied on erroneous summary-judgment rulings,

4

(b) deprived Houston Laureate of its right to a jury trial, and (c) granted nonspecific relief that the Residents neither requested nor proved.

### III. PARTIAL SUMMARY JUDGMENTS

A movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  If the movant establishes each element of the claim or defense for which it seeks traditional summary judgment, then the burden shifts to the nonmovant to disprove or raise a genuine issue of material fact regarding at least one of those elements.  *See Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam).  In analyzing an appeal from a traditional summary judgment, we review the evidence presented by the motion and response in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.  *See Gonzalez v. Ramirez*, 463 S.W.3d 499, 504 (Tex. 2015) (per curiam); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

The summary-judgment motions before us turn on questions of contract interpretation.  When reviewing a contract, our goal is to determine the parties' true intentions as expressed in the instrument.  *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).  We do not read any provision in isolation, but consider each provision with reference to the whole.  *See id.*  If the contract's language can be given a definite legal meaning or interpretation, then it is not ambiguous and we will construe the contract as a matter of law.  *See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)).  A

5

contract is ambiguous if, after applying the principles of contract construction, it is subject to more than one reasonable interpretation. *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). An ambiguous contract will not support summary judgment because it creates a question of fact about the parties' intent. *See id.*

## A. Houston Laureate Challenges Russell's and Goffman's Standing and Capacity.

In a threshold issue, Houston Laureate contends that Russell and Goffman lacked standing to assert their claims. Although the terms often are used imprecisely, the question of whether a party has "standing" to assert a claim is distinct from whether the party has the "capacity" to do so. *See Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 n.1 (Tex. 2015) (per curiam). "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). Because standing is a component of subject-matter jurisdiction, it cannot be waived or conferred by agreement. *See Bierwirth v. AH4R I TX, LLC*, No. 01-13-00459-CV, 2014 WL 5500487, at *2 (Tex. App.—Houston [1st Dist.] Oct. 30, 2014, no pet.) (mem. op.).

Because one of Houston Laureate's standing arguments is instead a challenge to capacity, we discuss the two arguments separately. First, however, we must address the Residents' assertion that this issue is moot.

### 1. Houston Laureate's challenges to Russell's and Goffman's standing and capacity are not moot.

According to the Residents, Houston Laureate's challenge to Russell's and Goffman's standing has been rendered moot by the parties' Rule 11 agreement.

*See* TEX. R. CIV. P. 11.  In that document, the parties agreed that "any remedy granted in the orders signed by the trial court in the above-referenced matter will be considered to grant relief to each and every Plaintiff as if that Plaintiff independently had sought such relief."[2]  This language does not moot Houston Laureate's standing and capacity arguments, because Houston Laureate agreed only that it would proceed as though Russell, Goffman, and the Association each successfully sought the same relief.  Houston Laureate did not agree that each of its three adversaries possessed the standing and capacity to do so.  We therefore will address the merits of those complaints.

### 2. *Russell and Goffman have standing to pursue their claims.*

Houston Laureate argues that Russell and Goffman cannot be personally aggrieved by its actions because "the right to use the Recreational Easement is now held by the Association—not the individual lot owners."  *See Nootsie, Ltd.*, 925 S.W.2d at 659.  After reviewing the question of standing de novo,[3] we disagree.

Section 1.1 of the Agreement states that the easement is being conveyed "for Recreational Purposes for the benefit of the Residential Land and for the use and benefit of the Residential Landowner."  Thus, the easement exists not only to benefit the Residential Landowner, but also to benefit the Residential Land.  As the name indicates, the "Residential Land" includes each individual lot on which a home was built.

Section 14.1 fulfills this stated purpose by providing that individual homeowners acquire "all rights under this Agreement" as part of the transfer of title to an individual lot:

---

[2] Although Russell was the only "plaintiff," the parties frequently applied the term not only to Russell but also to each intervenor.

[3] *See State v. Naylor*, 466 S.W.3d 783, 787 (Tex. 2015).

Any transferee of any part of the Office Building Land or the Residential Land shall automatically be deemed, by acceptance of the title to any portion of the Office Building Land or the Residential Land, to have succeeded to all rights under this Agreement and assumed all obligations under this Agreement relating thereto to the extent of such transferee's interest in the Office Building Land or the Residential Land, as the case may be . . . .

This is confirmed by section 5.1 of the Agreement, which provides that if the owner of a residential lot fails to pay amounts due under the Agreement, then Houston Laureate may suspend "the lot owner's (and its tenants and invitees) rights hereunder." If the Agreement conveyed no rights to the homeowners, then there would be no "rights hereunder" to suspend, and sections 5.1 and 14.1 would be meaningless. *See City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005) ("[R]eviewing courts must construe contracts as a whole; we do not consider only the parts favoring one party and disregard the remainder, as that would render the latter meaningless.").

In arguing that Russell and Goffman lack standing, Houston Laureate does not address any of these provisions, but instead relies on two other provisions concerning the assignment of the Residential Landowner's contractual rights and benefits. Section 8.1 required the Residential Landowner to assign its contractual rights to the Association, and section 12.1 permitted the Residential Landowner to assign its rights and benefits only to the Association or to a purchaser of the entirety of the Residential Land. But as we have just seen, the individual homeowners "succeeded" to the rights of the Residential Landowner and the Association without the need for an "assignment." *See id.*

We conclude that the Agreement confers upon the homeowners the contractual right to use the easement for recreational purposes. Because Russell and Goffman each possessed such a contractual right, each was personally

8

aggrieved by its actual or threatened violation, and thus, each had standing to sue for redress.

### 3. *Russell and Goffman have the capacity to pursue their claims.*

Houston Laureate also argues that only the Association, through its president as the Association's "Designated Representative," has standing to bring an action under the Agreement. This argument really is about capacity. *See, e.g.*, *Highland Credit Opportunities CDO, L.P. v. UBS AG*, 451 S.W.3d 508, 515–16 (Tex. App.—Dallas 2014, no pet.) (stating that whether an individual is entitled to sue on a contract is a question of capacity, not of standing); *Rutledge v. Leonard*, No. 10-07-00376-CV, 2009 WL 1412859, at *2 (Tex. App.—Waco May 20, 2009, no pet.) (mem. op.) (stating that an attorney's ability to sue a client for breach of the contract between the client and the attorney's professional limited liability company was a question of capacity). We may address the issue despite the misnomer. *See Coastal Liquids Transp., L.P. v. Harris Cty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001).

Section 14.8 expressly authorizes individual homeowners to enforce the Agreement through injunctive relief:

> 14.8 <u>Cumulative Remedies</u>. Except as otherwise provided herein, all rights and remedies of the parties' hereto set forth in this Agreement are cumulative and shall be deemed to be in addition to any and all other rights and remedies to which such party may be entitled at law or in equity . . . . *In the event of any violation or attempted or threatened violation of the provisions of this Agreement or any interference or attempted or threatened interference with the rights herein granted, the provisions of this Agreement may be enforced by any owner or Mortgagee of any portion of the Office Building Land or the Residential Land* by restraining orders or injunctions (temporary or permanent) commanding compliance with the terms hereof . . . .[4]

---

[4] Emphasis added.

9

Because this provision authorizes individual lot owners to enforce their contractual rights, Russell and Goffman have the capacity to do so.

As support for its position that only the Association's Designated Representative is permitted to sue on the contract, Houston Laureate relies on section 13.2 of the Agreement:

> 13.2  Multiple Owners. In no event shall the owners of all or a portion of the Residential Land be entitled to act or enforce their rights in any way other than through the Designated Representative appointed for the Residential Land; the Office Building Owner shall be obligated to deal only with such Designated Representative as to any matters pertaining to this Agreement. . . .

Section 13.2, however, must be read in light of Section 13.1, which addresses the purpose of a Designated Representative and what it means to "deal with" that person.  *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 842 (Tex. 2000) ("To determine the parties' intent, we must look at the arrangement as a whole."); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) (sub. op.) (discussing the "long-established rule that '[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions'" (quoting *Guardian Trust Co. v. Bauereisen*, 132 Tex. 396, 121 S.W.2d 579, 583 (1938))) (alterations in original). Section 13.1 provides as follows:

> 13.1  Designated Representatives.  [Houston Laureate] and the Residential Landowner shall each designate one representative *for purposes of receiving notices and communications* in connection with this Agreement. . . .  The parties hereto shall be obligated *to deal only with the Designated Representative to facilitate the purposes of this Agreement.*  Each party hereto shall be entitled to rely upon any decision, notice or communication provided from or given to such Designated Representative. . . .  [Houston Laureate] and the Residential Landowner hereby appoint their respective Designated Representatives as their true and lawful attorney in fact with the full

10

power and authority to do and take all such actions as are required or authorized to be taken under the terms of this Agreement by such party appointing such Designated Representative.[5]

To "facilitate" means to "make (an action or process) easy or easier." NEW OXFORD AMERICAN DICTIONARY 619 (Angus Stevenson & Christine Lindberg eds., 3d ed. 2010). And in this context, to "deal with" means to "take measures concerning (someone or something), esp. with the intention of putting something right." *See id.* at 445. But when that process breaks down and a homeowner sues Houston Laureate for breach of contract, the parties are no longer "deal[ing] with" one another "to facilitate the purposes" of the Agreement. The homeowner instead is asking a court to prevent further violations or to impose a remedy for Houston Laureate's past breach of contract. Section 13.1 grants the Association's Designated Representative the legal authority to sue on the homeowners' behalf, but it does not deprive the homeowners of the authority to personally assert their claims. *See also Ayres Welding Co. v. Conoco, Inc.*, 243 S.W.3d 177, 181 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (explaining that more specific provisions trump general provisions).

In addition to challenging the trial court's summary-judgment ruling on the issue of Russell's and Goffman's standing and capacity to pursue their claims, Houston Laureate challenges the trial court's denial of its motion for new trial on this issue. We review the denial of a motion for new trial for abuse of discretion. *See In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (per curiam). Houston Laureate did not brief this part of the issue, and in any event, its motion for new trial repeats the same argument made in its summary-judgment response. Because that argument is incorrect for the reasons discussed, the trial court did not abuse its discretion in denying the motion for new trial on the question of Russell's and

---

[5] Emphasis added.

Goffman's standing and capacity. Thus, we overrule Houston Laureate's first issue.

**B.    The Agreement Bars Houston Laureate from Charging a Licensing Fee for the Use of the Recreational Land by an Independent Fitness Trainer who is a Resident's Visitor or Invitee.**

Houston Laureate next challenges the trial court's partial summary-judgment ruling that the Agreement prohibits Houston Laureate from charging licensing fees to an independent fitness trainer who is authorized by a homeowner to use the Recreational Land. In seeking summary judgment on this issue, the Residents relied on section 1.6 of the Agreement:

> 1.6 <u>Mutual Use</u>. . . . The Office Building Owner hereby reserves for itself . . . the full, free, and uninterrupted use, liberty, right, privilege and easement, in common with the Residential Landowner and its assigns, and all others having like right, at all times hereafter, to use the easement granted together with such additional rights granted or reserved as provided herein. *Such mutual use shall be free of any charge or payment therefor (except as to expenses which are to be divided as herein provided)*, and shall be subject to the terms of this Agreement. . . .[6]

Section 1.6 unambiguously prohibits Houston Laureate from charging the Residential Landowner "and all others having like right" for use of the easement. We already have seen that the homeowners succeeded to the Residential Landowner's rights under the Agreement, and section 1.5 further provides that "[t]enants, invitees and visitors of the Residential Landowner and its assigns are hereby authorized to exercise any one or more of the rights granted to the Residential Landowner . . . , subject, however to the terms of this Agreement." Thus, the Agreement unambiguously bars Houston Laureate from charging the homeowners, their visitors, or their invitees to use the Recreational Land. This

---

[6] Emphasis added.

prohibition contains no exception for charges imposed by rule.[7] *See DeWitt Cty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999) ("[G]eneral provisions of the easement . . . cannot override other, more specific provisions of the easement that spell out in detail the parties' respective rights.").

Houston Laureate argues that the Agreement permits the Recreational Land to be used only for "recreational purposes," and that "recreational purposes" do not include "for-profit" activities. We do not consider whether that might be true in a more general sense, because in the Agreement, "recreational purposes" is a defined term. *Cf. Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 701 (Tex. 2002) ("*When the grant's terms are not specifically defined*, they should be given their plain, ordinary, and generally accepted meaning. ((emphasis added)). "Recreational Purposes" is defined as "picnicking, swimming, exercising, hiking, walking, jogging, ballplaying and other uses generally associated with parks and playgrounds." Thus, the Agreement identifies "recreational purposes" by the objective nature of the activity, not the participants' reasons for engaging in it.

Such "recreational purposes" naturally include supervising or assisting others in recreational use. When an adult supervises a child on a playground, they both are using the playground for a "recreational purpose," regardless of whether the adult is a parent or a paid babysitter. When one person pushes another in a wheelchair along a jogging trail, they both are using the trail for a recreational

---

[7] Moreover, section 1.6 gives Houston Laureate "the right to impose reasonable rules and regulations applicable to the Recreational Land and the improvements located thereon, so long as said rules and regulations do not unreasonably impair or restrict use of the Recreational Land and are consistently and uniformly applied to all users of the Recreational Land." Thus, Houston Laureate not only is flatly prohibited from imposing additional charges on one of the Recreational Land's users, but also is prohibited from enacting a rule that applies solely to those users who are, or who use the services of, independent fitness trainers.

purpose, regardless of whether the person providing assistance is a volunteer or a professional aide.

The same reasoning applies to the activity of exercising: when a homeowner is exercising under a person's guidance, they both are using the property for a recreational purpose; regardless of whether the person is a friend or a business invitee, the activity they are engaging in is the same. The Agreement specifically authorizes a homeowner's visitors and invitees to use the Recreational Land, and draws no distinction between the visitor's use and the same use by a homeowner's invitee.

Because the unambiguous language of the contract established the Residents' right to judgment on this issue as a matter of law, the trial court did not err in granting their motion for partial summary judgment on the issue of licensing fees. *See Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000) ("When a contract is unambiguous we will enforce it as written.").

Houston Laureate additionally contends that the trial court abused its discretion in overruling Houston Laureate's motion for new trial, which included an affidavit containing an expert opinion that "rules restricting third-party commercial activity at fitness facilities or on recreational land are reasonable and common" because that "is the only way to economically operate." We conclude that, for at least two reasons, the trial court did not abuse its discretion in denying the motion for new trial on this issue.

First, the affidavit was signed three weeks after the trial court rendered its final judgment. To obtain a retrial based on newly discovered evidence, a party must show that (a) the new evidence came to its knowledge since the trial, (b) its failure to discover the evidence sooner was not due to a lack of diligence, (c) the new evidence is not cumulative, and (d) the evidence is so material that it probably

14

would produce a different result if a new trial were granted. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). Houston Laureate addressed none of these factors in the trial court or on appeal.

Second, the evidence is directed to the wrong question: the Residents did not seek, and the trial court did not grant, summary judgment on the ground that Houston Laureate's rule charging independent fitness instructors was unreasonable. The question addressed was whether the Agreement mandates that the use of the Recreational Land by the Association, by a homeowner, or by a homeowner's employee, invitee, or visitor "shall be free of *any* charge or payment," without regard to whether such a charge otherwise would be reasonable. The answer to that question is yes, because the specific prohibition against charging for the use of the Recreational Land prevails over the more general provision permitting Houston Laureate to enact reasonable rules. *See DeWitt Cty. Elec. Co-op., Inc.*, 1 S.W.3d at 102. The trial court therefore did not abuse its discretion in denying the motion for new trial on the question of licensing fees.

We overrule Houston Laureate's second issue.

## C. The Agreement Bars Houston Laureate from Requiring the Residents to "Remain on Asphalt Paths at All Times."

The Residents also successfully sought partial summary judgment on the ground that Houston Laureate's rule, "Remain on asphalt paths at all times," eliminated the right to use the Recreational Land for, among other things, playing ball. In its summary-judgment response, Houston Laureate argued only that it has exclusive authority to regulate the use of the Recreational Land. Specifically, section 1.6 of the Agreement gives Houston Laureate "the right to impose reasonable rules and regulations applicable to the Recreational Land . . . , so long as said rules and regulations do not unreasonably impair or restrict use of the

15

Recreational Land . . . ." In addition, section 2.1 gives Houston Laureate "the exclusive authority . . . to operate the Recreational Land . . . and to make all decisions concerning the manner in which the Recreational Land . . . [is] maintained, repaired, improved, . . . configured, and operated." Houston Laureate analogized its position to that of the Houston Arboretum and Nature Center, which requires users to "stay on designated trails." Houston Laureate pointed out that the arboretum is a park, and concluded, "What the City can do, Houston Laureate can do."

But the Agreement did not convey a right to use the Recreational Land as an arboretum; it expressly conveyed to the Residential Landowner the right to use the Recreational Land for "picnicking . . . , *ballplaying* and other uses generally associated with parks *and playgrounds.*" (emphasis added). *Compare* NEW OXFORD AMERICAN DICTIONARY 81 (defining "arboretum" as "a botanical garden devoted to trees") with *id.* at 1341 (defining "playground" as "an outdoor area provided for children to play on, esp. at a school or public park"). Consistent with those purposes, section 1.1 of the Agreement conveyed an easement "on, over, and across the Recreational Land . . . *together with* the right to walk on and over the roadway, ramps and pedestrian access ways within the Recreational Land." (emphasis added). Similarly, "Recreational Land" is defined in the agreement to include not only "esplanades, pathways, trails, [and] bike paths," but also "green belts." Houston Laureate's summary-judgment argument ignores all of this language in contravention of the canons of contract construction. *See Plains Expl. & Prod. Co.*, 473 S.W.3d at 305 (explaining that in contract construction, courts must harmonize and give effect to all of the contract's provisions, so that none is rendered meaningless or given controlling effect). Because the terms of the Agreement do not permit Houston Laureate to restrict *all* use of *all* areas of the

16

green belt at *all* times, the trial court did not err in granting partial summary judgment on this issue.

Houston Laureate also contends that the trial court abused its discretion in denying its motion for new trial on this issue. In that motion, Houston Laureate argued that the rule prohibiting any user from stepping off of the asphalt paths is reasonable because it was enacted for safety reasons. Although Houston Laureate did not raise that argument in its summary-judgment response, it did file a motion to reconsider the partial summary judgment, and it argued in that motion that the grassy areas of the Residential Land are unsuitable for picnicking because "[t]hey are uneven, mostly sloping ground." The evidence offered in support of the motion for reconsideration consisted solely of copies of the orders granting partial summary judgment; however, the motion for reconsideration was heard after the evidentiary hearing on the temporary injunction, where the court heard evidence from Houston Laureate's Designated Representative Janice Levering King.

We do not agree with Houston Laureate's contention that King's testimony created a fact issue on the reasonableness of the rule regarding asphalt paths. At the hearing, King was asked about "conditions on the recreational land that can cause safety issues," and she testified that "[t]he terrain is uneven" and "[t]here is a lot of change in elevation on the property." She testified about erosion on the bayou adjacent to the property, but not on the property itself. Significantly, King did not link any of her statements about uneven terrain to the rule prohibiting users from stepping off of the asphalt paths, nor did she testify that the rule was passed for safety reasons.

The rule does not merely limit the use of the green belt; the rule eliminates it. That some terrain is uneven or unsafe cannot justify a complete ban. The Agreement authorizes Houston Laureate to issue rules limiting or regulating the

use of the Recreational Land, but the Agreement does not authorize Houston Laureate to issue a rule revoking a specific right of use that the Agreement has expressly conveyed.

We conclude that the trial court did not abuse its discretion in denying Houston Laureate's motion for new trial on this question, and we overrule this issue.

## D.     The Trial Court's Partial Summary Judgment Regarding Attorney's Fees is Overly Broad.

The trial court granted partial summary judgment that Houston Laureate cannot charge its attorney's fees from this case to the Residents. This ruling was incorporated into the permanent injunction, and Houston Laureate challenges both the injunction and the underlying summary judgment.

### 1.     *Houston Laureate's challenge to the partial summary judgment and the injunction regarding attorney's fees is not moot.*

The Residents assert that this issue is moot because after the trial court granted their motion for summary judgment on the matter of attorney's fees, all of the parties stipulated that they waived their respective rights to recover attorney's fees claimed or incurred at any stage of this litigation. Houston Laureate responds that the issue of attorney's fees is not moot because the partial summary judgment will continue to have a res judicata effect. Houston Laureate is correct. The waiver of attorney's fees from this litigation did not set aside the prior partial summary judgment, and the permanent injunction incorporated that ruling. The issue is not moot. *See Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 855 (Tex. 1995) (per curiam) ("A partial summary judgment is a decision on the merits unless set aside by the trial court."). The waiver still affects the appeal, however, because Houston Laureate has waived the right to relitigate its ability to shift responsibility for the attorney's fees it incurred in this case. Thus, if we conclude

18

that the trial court erred in any of its rulings concerning attorney's fees, we may reverse the ruling so that it will not bar Houston Laureate from litigating its right to recover attorney's fees arising from a different case, but we cannot remand any claim for fees arising from this litigation because Houston Laureate has waived any right it may have had to recover those fees.

> ***2.***      ***The Agreement's indemnification provision does not apply to Houston Laureate's attorney's fees incurred in defending against the Residents' pursuit of injunctive relief, but the Residents did not argue that the provision applies to Houston Laureate's attorney's fees incurred in defending against their claims for damages.***

We begin our analysis with the language of the relevant provision. Section 3.2 of the Agreement contains the following waiver-and-indemnification provision:

> To the extent not expressly prohibited by law or caused by [Houston Laureate's] gross negligence or willful misconduct, Residential Landowner hereby releases [Houston Laureate] . . . from and waives all claims for damages, losses and liability to persons or property sustained by the Residential Landowner . . . arising or resulting from or in connection with the use of the Recreational Land and the Residential Landowner hereby agrees to indemnify, save, protect and hold harmless [Houston Laureate] . . . from and against all such liability, losses, damages, costs and claims, including without limitation court costs and reasonable attorneys' fees and expenses. . . . Notwithstanding the foregoing, nothing contained herein is intended to release either the Residential Landowner or [Houston Laureate] from any other obligations contained in this Agreement.

Under this provision, the Residential Landowner has a duty to indemnify Houston Laureate for attorney's fees only if the fees were incurred in connection with a claim that the Residential Landowner has waived or released. As previously discussed, however, section 14.8 reserves the right of homeowners and of the Association to sue for injunctive relief. Thus, claims seeking injunctive relief for Houston Laureate's actual or threatened breach of the Agreement were neither waived nor released.

In their motion for partial summary judgment on the issue of attorney's fees, the Residents argued that section 3.2 does not obligate them to indemnify Houston Laureate for its attorney's fees because they "are making no claim for 'damages, losses (or) liability," and the Residents are not "obligated to indemnify [Houston Laureate] for the cost of defending its violations of the easement against suits for injunctive relief." Houston Laureate responded that the Residents also asserted claims for damages, losses, and liability, and it repeated that argument in its motion for new trial. Both sides are partially correct.

Because the Agreement preserves the Residents' rights to pursue injunctive relief, we agree with the Residents that they are not obligated to indemnify Houston Laureate for the attorney's fees it incurred in litigating the Residents' entitlement to such a remedy. We accordingly affirm the portion of the permanent injunction that is based on the trial court's partial summary judgment on that question, and we hold that the trial court did not abuse its discretion in denying Houston Laureate's motion for new trial on that point.

On the other hand, the Residents are mistaken in asserting that they made no claims for damages, losses, or liability. Goffman sued for breach of contract, and in his first two pleadings, he also alleged constructive eviction. He dropped his constructive-eviction claim after Houston Laureate moved for summary judgment on that cause of action, but he continued to pursue his claim for breach of contract. In his live pleading, Goffman specifically prayed to recover damages caused by Houston Laureate's breach of the Agreement.

Because the Residents raised no grounds for summary judgment regarding their duty to indemnify Houston Laureate for the attorney's fees it incurred in connection with claims for damages, the trial court erred in granting partial summary judgment that section 3.2 prohibits Houston Laureate from charging such

fees to the Residents.  We reverse the trial court's partial summary judgment concerning Houston Laureate's right to indemnification for fees it incurred in connection with claims against it for damages in this litigation, and we modify the permanent injunction to clarify that Houston Laureate is barred from charging the Residents for those attorney's fees, not because of the trial court's ruling, but because it has waived its contractual right, if any, to do so.

> **3.      *The Residents failed to establish that Houston Laureate is not authorized to charge a portion of its attorney's fees to the Association under the Agreement's operation-expenses provision.***

The Agreement requires the Residential Landowner to pay for 25% of Houston Laureate's "maintenance and operation expenses."  Section 2.3 defines that expression as follows:

> 2.3  <u>Maintenance and Operation Expenses</u>.  The term "Maintenance and Operation Expenses", as used herein, shall include, without limitation, the following:
>
>> (a) the aggregate of all reasonable, necessary and proper costs[,] expenses and liabilities of every kind and nature paid or incurred in operating, maintaining, repairing, insuring and supervising or policing the use [of] the Recreational Land, any improvements located thereon and any public easements or rights-of-way appurtenant thereto, including without limitation, signs, an equitable allocation of the costs of providing guards or other security personnel or devices, if any, that [Houston Laureate] deems reasonably necessary and which is commercially practicable for proper supervision and security pertaining to the use of the Recreational Land, cleaning, sweeping, striping, paving, painting, snow and debris removal, landscaping, lighting, sprinklering, sidewalk and surface repair, equipment rental and purchase, utilities, reasonable reserves, an equitable allocation of management fees, an equitable allocation of labor costs, direct labor, supplies, utilities, casualty, liability and any other insurance, maintenance,

demolition, repairs (structural or otherwise), replacement. . . .

The term "Maintenance and Operation Expenses", shall exclude the following:

. . . .

(e) Any expenses incurred solely for the benefit of, or attributable to the requirements of, the Office Building Land (or [Houston Laureate]), or the Residential Land (or the Residential Landowner), which expenses shall be borne exclusively by the party required to incur them, or solely benefiting from them.

The Residents maintain that Houston Laureate's attorney's fees were not recoverable as "operation expenses" under section 2.3, and sought partial summary judgment on this issue on three grounds. We conclude, however, that the trial court's ruling cannot be sustained on any of them.

First, the Residents reasoned that Houston Laureate's attorney's fees are not "necessary and proper" operation expenses because the fees were incurred in defense of rules that violated the Agreement. Stated differently, the Residents argued that Houston Laureate could not recover attorney's fees because the trial court agreed with the Residents that Houston Laureate breached the contract. The flaw in that position is that section 2.3 contains no "prevailing party" language; thus, the Residents did not establish that, as a matter of law, Houston Laureate's attorney's fees were not "necessary and proper" simply because Houston Laureate's defense of its rules was unsuccessful.

Second, the Residents argued that Houston Laureate's attorney's fees were "incurred in litigating, a term not mentioned in 2.3 and an activity not suggested by any of 2.3's laundry list of examples." Although section 2.3 does not use the word "litigating," it provides that operation expenses "include, *without limitation*, . . . the aggregate of *all* reasonable, necessary and proper costs[,] expenses and liabilities

22

*of every kind and nature* paid or incurred in operating, . . . [or] policing the use [of] the Recreational Land." (emphasis added). The subsequent list of included expenses is not a limitation of this expansive language. *See, e.g.*, *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 134 Tex. 574, 582, 136 S.W.2d 800, 804 (1940); *Jones v. St. Paul Ins. Co.*, 725 S.W.2d 291, 292 (Tex. App.—Corpus Christi 1986, no writ).

As a third ground for summary judgment, the Residents made the bare assertion that "[t]he attorneys' fees in question were unquestionably 'solely for the benefit of,' *and* 'attributable to the requirements of' Defendant [Houston Laureate]." This statement is no more than an unsupported allegation. The Residents made no attempt to explain why, as a matter of law, this allegation is true.

On the question of whether Houston Laureate can charge a portion of its attorney's fees to the Residents as operation expenses, the partial summary judgment cannot be affirmed on any of the grounds advanced in the Residents' motion. We therefore reverse the portion of the partial summary judgment holding that section 2.3 prohibits Houston Laureate from charging a portion of its attorney's fees as operation expenses, and we modify the permanent injunction to clarify that Houston Laureate is barred from charging those fees to the Residents, not because of the trial court's ruling, but because Houston Laureate has waived its contractual right, if any, to do so.

## IV. FINAL PERMANENT INJUNCTIVE RELIEF

In its remaining issue, Houston Laureate challenges each portion of the permanent injunction. We review the grant of injunctive relief for abuse of discretion. *See Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998); *Tanglewood Homes Ass'n, Inc. v.*

23

*Feldman*, 436 S.W.3d 48, 46 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam).

## A. Houston Laureate Cannot Show That It Was Deprived of the Right to a Jury Trial.

Houston Laureate contends that it "was deprived of a jury trial on the issue of the availability of a permanent injunction" and cites the page of its first amended answer in which Houston Laureate demanded a jury trial and stated that it tendered the appropriate fee with the pleading. Nevertheless, the right to a jury trial can be waived even after the jury fee is paid. *See In re K.M.H.*, 181 S.W.3d 1, 8 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The Residents maintain, and Houston Laureate denies, that under the terms of the parties' joint stipulation, Houston Laureate has waived this complaint. To resolve this issue, we must construe the joint stipulation.

We review stipulations among parties in the same way as other contracts. *See In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006) (orig. proceeding) (per curiam). We construe the agreement in light of its stated purpose. *See, e.g.*, *Kilgore Expl., Inc. v. Apache Corp.*, No. 01-13-00347-CV, 2015 WL 505275, at *6–7 (Tex. App.—Houston [1st Dist.] Feb. 5, 2015, no pet.) (mem. op.) (construing a contract in light of the purpose stated in the opening recitals); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 129 (Tex. App.—Houston [14th Dist.] 1997) (same), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692 (Tex. 2000).

After the evidentiary hearing about extending the temporary injunction through trial, the parties jointly stipulated as follows:

> [All parties] appear through their respective counsel to *enter into this Stipulation to conclude all matters presently pending in this Court and to allow the Court to enter a final appealable judgment.*

The Parties agree and stipulate to the following:

1. *[Houston Laureate] agrees that it will not argue on appeal that the Final Judgment and Permanent Injunction ("Judgment") to* be entered in this proceeding is not final or that the Judgment *is procedurally defective because there has been no trial on the merits.* Houston Laureate reserves the right to object and to challenge on appeal any factual and legal findings that the Court makes in support of permanent injunctive relief including the right to a jury trial where applicable.[8]

By reserving the right to challenge the trial court's factual findings and legal conclusions "*including* the right to a jury trial," Houston Laureate preserved the ability to argue for a jury trial *as part of* its challenge to the trial court's findings of fact and conclusions of law. *See* NEW OXFORD AMERICAN DICTIONARY 879 (defining "including" as "containing as part of the whole being considered). This language ensured that, even though Houston Laureate agreed to forego a jury trial so that the trial court's interlocutory rulings could be incorporated into an appealable final judgment and permanent injunction, Houston Laureate still could argue on appeal that if it successfully challenged one of the trial court's findings of fact or conclusions of law, then it was entitled to a jury trial on remand.

At oral argument, Houston Laureate characterized the stipulation as an agreement that Houston Laureate would not argue that the absence of a jury trial was a *procedural* defect, but maintained that their appellate complaint is not waived because failure to conduct a jury trial is a *substantive* defect. In effect, then, Houston Laureate contends that although it agreed to forego a jury trial so that it could appeal, it nevertheless reserved the right to argue on appeal that it was

---

[8] Emphasis added.

deprived of a jury trial. This is not a reasonable construction of the parties' agreement.

Moreover, even if we agreed that Houston Laureate's construction of the stipulation were correct, the doctrine of invited error still would prevent Houston Laureate from arguing on appeal that it was deprived of a jury trial. Under the doctrine of invited error, a party that requests a specific action in the trial court cannot complain on appeal that the trial court committed error in granting the request. *See Lamell v. OneWest Bank, FSB*, 485 S.W.3d 53, 64 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). The parties entered into the stipulation after the evidentiary hearing on the temporary injunction, and they agreed that they did so to end the litigation in the trial court and proceed with an appeal. The trial court recited in the judgment that the attorneys for all parties appeared before the trial court and moved for entry of final judgment and permanent injunction. The trial court granted the motion, and in the requested final judgment and permanent injunction, the trial court expressly stated that its ruling was "based on the joint stipulation,"[9] among other things. Having successfully moved for the trial court "to conclude all matters presently pending" in the trial court rather than proceeding to a jury trial on the merits, Houston Laureate cannot be heard to complain that the trial court erroneously deprived Houston Laureate of the right to a jury trial.

## B. The Permanent Injunction Must Be Modified to Eliminate the Incorporation of Erroneous Partial Summary-Judgment Rulings.

In the next part of this issue, Houston Laureate contends that the trial court abused its discretion in granting permanent injunctive relief that relied on erroneous summary-judgment rulings. Specifically, the trial court permanently enjoined Houston Laureate from

---

[9] Capitalization eliminated.

26

- Limiting [the Residents'] use of the Park Laureate Grounds covered by the [Agreement] to asphalt paths;

- Imposing any charge, directly or indirectly, on [the Residents] for using a personal trainer at the Park Laureate exercise facility, or on such a trainer employed by [the Residents]; [and]

  - Imposing any charge on or seeking any indemnity from [the Residents] for attorney's fees and court [costs] [Houston Laureate] has incurred in this proceeding . . . .[10]

As previously discussed, only the injunction concerning attorney's fees is based on an erroneous summary-judgment ruling, and we modify the permanent injunction accordingly.

## C. The Permanent Injunction Must Be Further Modified Only to Eliminate Vague Language About Unspecified "Interference."

The trial court also permanently enjoined Houston Laureate from

- Interfering with [a Resident's] rights to use and enjoyment of the [Agreement] [sic][;]

- Suspending or purporting to suspend [a Resident's] rights under the [Agreement] based on a purported failure or refusal to pay an amount due under the [Agreement] when the amount is disputed and there has been no judicial determination that the amount is owed; [and]

- Threatening criminal prosecution of [a Resident], for trespass or otherwise, based on a purported suspension of rights under the [Agreement] . . . .

Of these three categories of enjoined conduct, Houston Laureate has briefed its challenges to the last two categories together, and we address them in the same way.[11]

---

[10] The judgment actually refers to "attorney's fees and court courts [sic]," which is an obvious clerical error. The judgment states that it is rendered based on the parties' prior stipulations, agreements, and the trial court's previous rulings for summary judgment, and in the summary judgment regarding attorney's fees, the trial court held that sections 2.3 and 3.2 of the Agreement do not allow Houston Laureate to charge any of the Residents "for attorneys' fees and court *costs* incurred" in this case.

27

***1.*** *The injunction against interfering with a Resident's rights to the use and enjoyment of the Agreement or of the Recreational Land is overly broad and non-specific.*

To quote from the judgment, the trial court enjoined Houston Laureate from "[i]nterfering with Plaintiff or Intervenors' rights to use and enjoyment of the REA." "REA" was defined in the judgment to mean the Recreational Easement Agreement, which we have called simply "the Agreement." Thus, under the literal terms of the judgment, Houston Laureate is enjoined from interfering with a Resident's right to use and enjoyment of the Agreement.

Houston Laureate contends that this part of the injunction "is not specific because it does not identify or define the rights at issue other than by generally referencing the Easement Agreement."[12] In support of this argument, Houston Laureate cites *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 15, 291 S.W.2d 697, 702 (1956) (quoting *Villalobos v. Holguin*, 146 Tex. 474, 480, 208 S.W.2d 871, 875 (1948)). In that case, the Texas Supreme Court acknowledged its prior holding that an injunction "must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing." *Id.* The court added that "the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in

---

[11] We have reordered the list so that the categories of enjoined conduct that Houston Laureate briefed together are addressed last.

[12] Houston Laureate also relies on Texas Rule of Civil Procedure 683. *See* TEX. R. CIV. P. 683 ("Every order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ."). However, this court has held that "Rule 683 applies to temporary injunctions, not permanent injunctions." *Malekzadeh v. Malekzadeh*, No. 14-05-00113-CV, 2007 WL 1892233, at \*2 (Tex. App.—Houston [14th Dist.] July 3, 2007, pet. denied) (mem. op.).

form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written." *Id.*

It always has been the case, however, that a trial court abuses its discretion in rendering a decree of injunction "so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his rights." *Coyote Lake Ranch, LLC v. City of Lubbock*, No. 14-0572, 2016 WL 3176683, at \*10 (Tex. May 27, 2016) (quoting *Holubec v. Brandenberger*, 111 S.W.3d 32, 39–40 (Tex 2003)); *Villalobos*, 146 Tex. at 480, 208 S.W.2d at 875. Under the terms of the Agreement, Houston Laureate has "the right to impose reasonable rules and regulations applicable to the Recreational Land and the improvements located thereon, so long as said rules and regulations do not *unreasonably* impair or restrict use of the Recreational Land and are consistently and uniformly applied to all users of the Recreational Land."[13] But even reasonable rules and regulations interfere to some extent with the Residents' rights to the use and enjoyment of the Recreational Land. We conclude that the trial court abused its discretion in enjoining Houston Laureate from "interfering with [a Resident's] rights to use and enjoyment" of the Recreational Land because this far-reaching prohibition enjoins Houston Laureate even from the proper exercise of its rights.[14] Because this portion of the judgment is too broad and generalized to stand, we sustain this part of Houston Laureate's sixth issue and we modify the judgment to delete this part of the injunction.

---

[13] Emphasis added.

[14] Moreover, even if the language were modified to permit Houston Laureate to impose reasonable rules that interfere with the Residents' rights, reasonableness usually is a question of fact about which reasonable minds may differ. Were Houston Laureate to misjudge the reasonableness of a proposed rule in the future, Houston Laureate's breach of the contract would constitute contempt of a court order.

### 2. *Houston Laureate failed to preserve its complaint that the Residents' pleadings do not support the remaining injunctions.*

Houston Laureate's remaining complaint is directed to the injunctions prohibiting Houston Laureate from suspending the Residents' contractual rights for failing or refusing to pay disputed fees and from threatening the Residents with criminal prosecution. According to Houston Laureate, these injunctions must fail because the Residents "did not plead that Houston Laureate could not suspend rights or remove trespassers from the property." The Residents alleged exactly that in their application for temporary and permanent injunction and requested the relief that the trial court granted, but Houston Laureate contends that the trial court erred in doing so because a judgment must be supported by the pleadings, and an "application" is not a "pleading."

Here, too, the invited-error doctrine prevents us from considering this argument. The Residents complied with the procedure for obtaining a temporary injunction by petitioning the trial court for such relief. *See* TEX. R. CIV. P. 682 ("No writ of injunction shall be granted unless the applicant therefor shall present his petition to the judge verified by his affidavit and containing a plain and intelligible statement of the grounds for such relief."). The Residents filed such a verified petition, and although it is referred to as an "application," the use of this word accurately reflects that it was filed by an "applicant" for injunctive relief as described in Rule 682. *Cf. Cohen v. Landry's, Inc.*, 442 S.W.3d 818, 823 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("The nature of a motion is determined by its substance, not its title or caption."). After the trial court announced that it was granting the temporary injunction, Houston Laureate asked that the trial court render an appealable permanent injunction. Houston Laureate therefore consented to the rendition of permanent injunctive relief based on the procedures governing a request for a temporary injunction, and the trial court's

30

error, if any, in acceding to this request was invited.  *See also* TEX. R. CIV. P. 90 (providing that in a non-jury case, a party who wishes to complain on appeal about defects or omissions of the pleadings must specifically point them out in writing and bring them to the trial court's attention before the judgment is signed, or  the complaint is waived); TEX. R. APP. P. 33.1(a) (requiring complaints to be made in the trial court as a prerequisite for appellate review); *Sherman v. Provident Am. Ins. Co.*, 421 S.W.2d 652, 654 (Tex. 1967) ("Insufficiency of pleadings cannot be raised for the first time in the appellate courts."); *Malekzadeh v. Malekzadeh*, No. 14-05-00113-CV, 2007 WL 1892233, at *2 (Tex. App.—Houston [14th Dist.] July 3, 2007, pet. denied) (mem. op.) (same).

Houston Laureate additionally argues that the Residents "did not move for summary judgment on these issues, and Houston Laureate has not had a trial on the merits on these issues."  But, as previously discussed, the invited-error doctrine bars Houston Laureate from complaining on appeal that the case did not proceed to trial.  We accordingly do not address these portions of Houston Laureate's sixth issue.

## V. CONCLUSION

Our rulings on the issues presented in this appeal are as follows:

A.      We conclude that Houston Laureate's challenges to the trial court's partial summary-judgment rulings on Russell's and Goffman's standing and capacity and on Houston Laureate's contractual right to charge the Association for some or all of the attorney's fees that Houston Laureate incurred in this proceeding are not moot.

B.    Regarding the merits of Houston Laureate's challenges to the trial court's rulings on the summary-judgment motions and on the motion for new trial, we affirm the trial court's rulings

1.    denying Houston Laureate's motion for partial summary judgment challenging and Russell's and Goffman's standing and capacity to pursue their claims;

2.    granting the Residents partial summary judgment on their claim that Houston Laureate violated the Agreement by charging a licensing fee for the use of the Recreational Land by an independent fitness trainer who is a Resident's visitor or invitee;

3.    granting the Residents partial summary judgment on their claim that Houston Laureate violated the Agreement by requiring the Residents to remain on the asphalt paths at all times;

4.    granting the Residents partial summary judgment on their contention that the Agreement's indemnification provision does not authorize Houston Laureate to charge the Association for the attorney's fees Houston Laureate incurred in this case in defending against the Residents' requests for injunctive relief; and

5.    denying Houston Laureate's motion for new trial on these issues.

C.    We reverse the trial court's summary-judgment rulings only to the extent that the trial court

1.    ruled on the question, not presented in the summary-judgment motion, of whether the Agreement's indemnification provision authorizes Houston Laureate to charge the Association for the attorney's fees and

32

court costs Houston Laureate incurred in this case in defending against claims for monetary damages; and

2.     granted summary judgment on the question of whether the Agreement's operation-expenses provision authorizes Houston Laureate to charge the Association for a portion of the attorney's fees Houston Laureate incurred in this case.

D.     Concerning Houston Laureate's challenge to the trial court's permanent injunction, we hold that

1.     Houston Laureate is unable to show that the trial court deprived it of the right to a jury trial on the merits; and

2.     Houston Laureate did not preserve its complaint that the pleadings fail to support the injunctive relief ordered; but

3.     the general injunction against interfering with a Resident's rights to the use and enjoyment of the Agreement or of the Recreational Land is too vague to be enforceable.

E.     To the extent that we have reversed the trial court's partial summary-judgment rulings,

1.     we reverse the permanent injunction based on those rulings to the same extent; and

2.     Houston Laureate's challenge to the denial of its motion for new trial on those matters is moot.

Finally, we effectuate these rulings by modifying the portion of the amended final judgment which lists the permanent injunctive relief ordered. As modified, that portion of the judgment now reads as follows:

33

Plaintiff Marolyn Russell and Intervenors Joel Goffman and Park Laureate Place Homeowners' Association (collectively, "the Residents") are entitled to a permanent injunction against Defendant Houston Laureate Associates, Ltd. ("Houston Laureate") on their claims for breach of contract. It is, therefore, ORDERED that Defendant Houston Laureate Associates, along with its officers, agents, partners, employees, and all others with whom they are in privity, be and hereby are permanently enjoined from:

- Limiting the Residents' use of the Park Laureate Grounds covered by the Recreational Easement Agreement ("REA") to asphalt paths;

- Imposing any charge, directly or indirectly, on the Residents for using a personal trainer at the Park Laureate exercise facility, or on such a trainer employed by a Resident;

- Seeking indemnity under section 3.2 of the REA for attorney's fees and court costs Houston Laureate has incurred in this proceeding in defending against the Residents' requests for injunctive relief;

- Otherwise imposing any charge on the Residents, or seeking indemnity from the Residents, for attorney's fees and court costs that Houston Laureate has incurred in this proceeding and that Houston Laureate has waived its contractual right, if any, to recover;

- Suspending or purporting to suspend a Resident's rights under the REA based on a purported failure or refusal to pay an amount due under the REA when the amount is disputed and there has been no judicial determination that the amount is owed; and Threatening criminal prosecution of a Resident, for trespass or otherwise, based on a purported suspension of rights under the REA.


/s/ Tracy Christopher
   Justice


Panel consists of Justices Christopher, McCally, and Busby.

34