Dennis ROBINSON, Relator,

v.

PLANO BOARD OF EDUCATION, PLANO INDEPENDENT SCHOOL DISTRICT, et al., Respondents.

No. 18443.

Court of Civil Appeals of Texas, Dallas.

Aug. 26, 1974.

R. W. (Bill) Glenn, Plano, for relator.

Nathan E. White, Jr., Plano, Warren Whitham, Dallas, for respondents.

CLAUDE WILLIAMS, Chief Justice.

Pursuant to authority of Vernon's Tex. Rev.Civ.Stat.Ann. art. 1735a (Vernon 1962) relator Dennis Robinson filed his petition in this court seeking a writ of mandamus compelling respondents to issue to him a certificate of election as Trustee, Place One, of Plano Independent School District. We refuse to issue the writ because relator, by his own acts, is estopped from receiving the relief sought.

The record reveals without dispute the following material antecedent facts:

The election for the office of Trustee of the Plano Independent School District for Places One, Two and Three was held on Saturday, April 6, 1974. Relator Robinson, and respondent J. David Black were candidates for Place One on the ballot. On Tuesday, April 9, 1974, the Board of Trustees of the Plano Independent School District canvassed the returns of the election and declared that Robinson received 873 votes, Black 764 votes, and one other candidate 73 votes. Thereafter it was discovered that absentee ballots had inadvertently not been counted. On Monday, April 15, 1974, the officials conducting the election decided to open these absentee ballots. All interested persons, including the relator and respondent Black, were notified and were present either in person or by representative at the time the absentee ballots were opened and counted. The results showed that relator Robinson had a total of 916 votes and all other candidates had 915 votes. The fact that there was only a one-vote majority apparently caused concern among all persons involved. Therefore, on April 16, 1974, there was a meeting of the Board of Trustees at which relator Robinson, respondent Black, and other interested persons were present. During the course of this meeting concern was expressed by members of the board as well as by the candidates as to the one-vote majority and as to the reaction that this might cause in the minds of the voters of the district. The proposal to appoint a

committee to recount the ballots was tendered and relator Robinson made the following statement:

I made the comment to my campaign manager last night, that if it got down to one vote and David (place one candidate Black) didn't decide to ask for a recount, that I thought the way I felt I would almost want it to erase any question in anybody's mind as to, you know, was that one vote the actual vote or was it one vote the different direction. So what Ted (place two candidate Dickey) was saying, I'll agree wholeheartedly; let's get the thing out; if the judges cannot recount it, let's get it recertified as far as we can and get the questions cleared up out of it because we are already prolonging board business, things that need to be considered that can't without a full board. This thing could drag on for months if the options to contest the count later are exercised.

Respondent Black agreed with relator Robinson, so the board acted upon a motion and appointed a committee to recount the ballots. On Wednesday, April 17, 1974, the committee met and proceeded to recount all the ballots, including the absentee ballots, cast in the April 6 election. During the course of this recount Black and Robinson were present, as was Al Bond, Robinson's campaign manager. Upon the conclusion of the recount all persons present were satisfied that the recount was accurate. That same day the board met to receive and canvass the returns of the committee and declare the results of the April 6 election. At that time the board declared the results to be: J. David Black 873 votes, Dennis Robinson 881 votes, and 55 write-in votes. The board therefore ordered a runoff election for the office of Plano Independent School District for Place One to be held Saturday, May 11, 1974, between Black and Robinson. During the period between April 17 and May 11, 1974, Robinson actively campaigned for the office and sought the vote of the electorate on behalf of his candidacy. Robinson voted in the May 11, 1974, runoff election. On Tuesday, May 14, 1974, the board canvassed the results of the runoff election and declared the results to be: J. David Black 593 votes, and Dennis Robinson 366 votes. On Tuesday, May 14, 1974, the board issued a certificate of election to J. David Black, and he immediately took the oath of office and has at all times thereafter acted as Trustee of the Plano Independent School District.

On Monday, June 10, 1974, Robinson instituted an election contest in the District Court of Collin County, Texas, and the case is still pending on the docket of that court.

On July 15, 1974, relator Robinson filed his petition for writ of mandamus in which he contended that he was entitled to a certificate of election by virtue of the results of the election of April 6 and by virtue of the counting of the absentee ballots cast for the April 6, 1974, election. It was contended by respondents, inter alia, that the relief sought should be denied because of estoppel, waiver, and ratification on the part of relator Robinson.

In Love v. Wilcox, 119 Tex. 256, 28 S. W.2d 515 (1930), the Supreme Court reasserted several limitations relative to the issuance of a writ of mandamus in an original proceeding brought in an appellate court. The court there pointed out that in such a case the proceeding involved must be of a general public interest and must call for a speedy determination, and that the extraordinary remedy must be clearly demonstrated to be proper and necessary for the enforcement of the right asserted. Relator Robinson argues that the right which he asserts is that which he was entitled to as a result of the official count of the election on April 9, 1974. He contends that by virtue of Tex.Educ.Code Ann. § 23.10(b) (Vernon 1972), V.T.C.A., the trustees of the school district were bound and obligated on said date to issue to him a certificate of election, and that anything that transpired thereafter would not de-

prive him of his right to seek relief by way of mandamus to enforce such right. We cannot agree.

It is well settled that one who by his speech or conduct has induced another to act in a particular manner ought not to be permitted to adopt an inconsistent position, attitude, or course of conduct and thereby cause loss or injury to the other. 22 Tex.Jur.2d Estoppel § 4 at 664 (1961). This doctrine of estoppel has been held to be appropriate to prevent the issuance of mandamus in an election contest. Thus in 26 Am.Jur.2d Elections § 277 at 104 (1966) it is said that if the irregularity of the election is due to the act on the part of the contesting candidate or has been acquiesced in by him, the court may properly hold him estopped to protest.

The leading Texas case applying the doctrine of estoppel to prevent the issuance of a writ of mandamus in an election contest is Pendleton v. Pace, 9 S.W.2d 437 (Tex.Civ.App.—Texarkana 1928, writ ref'd). That case involved a party primary election for the office of County Judge. The County Democratic Executive Committee canvassed the returns and found that Pendleton had a twenty-six-vote majority. Before the Chairman of the Committee had certified the nomination Pace timely contested the election before the County Executive Committee. The Committee appointed a subcommittee which adopted a motion to open the ballot boxes and recount the votes. Before the ballots had been reopened and recounted Pace and Pendleton entered into an agreement to settle the contest on the basis that their names would be put on the official ballot as candidates for the office to be voted on the second primary election. They agreed that the result of that election would be accepted as determining the nomination for office. As a result of the runoff election Pace received a majority of 156 votes. Pendleton then sought a writ of mandamus in the district court to compel the Chairman of the County Democratic Executive Committee to certify his nomination as a result of the first election. The district court denied the writ and the court of civil appeals affirmed. In a well-reasoned opinion by Justice Levy the court pointed out that the doctrine of equitable estoppel is applicable to the particular circumstances presented, in that Pendleton and Pace's agreement to set aside and make void the result of the first primary clearly indicated their intent to withdraw from or decline any legal position or claim of right of nomination by virtue of that first election. The court reasoned that it was quite competent for contesting parties to agree to withdraw and abandon contest proceedings or to decline a nomination or any claim of right to a nomination in the first primary. Having done so the parties were bound by their agreement and estopped from resorting to or insisting upon any former status or claim of right to nomination by virtue of the first primary. The rationale of this opinion, when applied to the very similar factual situation now before us, clearly supports respondent's position.

Likewise, in Sartin v. Hudson, 143 S.W. 2d 817 (Tex.Civ.App.—Fort Worth 1940, no writ), Sartin sought a writ of mandamus in a district court to declare him to be the duly elected nominee for the office of County Judge in that he had received a plurality of the votes cast in the July 27 primary. The controversy arose concerning the results of the election, and other procedural matters, and Sartin's name was placed on the runoff ballot for August 24. Sartin entered this runoff election and made a vigorous campaign to secure votes but did not receive a majority of the votes cast in the second primary. The court denied the writ of mandamus and pointed out that by his own acts and conduct Sartin had become estopped to assert his rights by virtue of the first primary.

In denying mandamus the court pointed out that even if relator could not anticipate that his conduct would estop him from claiming that he was nominated in the first primary when the answer asserting estop-

pel was filed it became incumbent upon him to plead facts which would relieve him of his acts in the premises. In our case relator Robinson completely failed to allege any facts which would negate the allegations of estoppel; instead he erroneously takes the position that all that transpired after the official canvass of the April 9 election should be overlooked and forgotten. In this he is obviously wrong.

In Antoine v. Andrews, 150 S.W.2d 293 (Tex.Civ.App.—Galveston 1941, no writ) Antoine sought mandamus in the district court to compel the City Democratic Executive Committee to order a new election for certain party officials. He had been a candidate for the office of Chairman of the City Democratic Executive Committee and had participated in the election of which he complained. The district court denied mandamus and the court of civil appeals affirmed because Antoine, having consented to participate in the election with full knowledge of its conditions, was plainly estopped from undoing that which he had consented to have done.

This record abundantly demonstrates the applicability of these authorities in support of the denial of mandamus. Robinson admittedly knew, as a result of the April 9 election and also as a result of the counting of the absentee ballots on April 16, 1974, that he was at those times the winner of the election and was entitled to a certificate declaring his election. However, he did not on either of those occasions seek to enforce his rights, but admittedly entered into an agreement with all the other concerned parties that there should be a recount of the votes cast. Robinson admitted that Black could, and probably would, have demanded a recount had the recount not been accomplished by agreement. Black relinquished this right and agreed with Robinson, and the other interested parties, that a committee be set up to recount the ballots. The results of the recount brought about the necessity for a runoff between Robinson and Black. Robinson made no protest to this additional race but to the

contrary actively participated therein and campaigned vigorously. He failed in this effort and then came into this court asking for a writ of mandamus to declare him to be the winner by virtue of the April 9 election. We hold that he has, by his own acts, relinquished the rights which he may have had by virtue of the April 9 election and that he may not now ask us to undo that which he has agreed might be done. As so aptly stated by the court in Sartin v. Hudson, *supra*:

> He could not acquiesce in the acts of the committee and its chairman and speculate upon the results of a second primary, and after being defeated at the last election, repudiate the act of that primary and rely upon the result of the first.

Relator's application for writ of mandamus is denied.