Martha Hill Jamison, Justice
In this original proceeding, we are asked to decide whether Section 153.0071 of the Texas Family Code permits the parties to a mediated settlement agreement in a suit affecting the parent-child relationship ("MSA") to agree to set aside the MSA. Here, there is evidence that the parties agreed to set aside the MSA. The trial court, however, never ruled that the MSA
*449 was set aside. Subsequently, relator Gladys N. Minix moved to enter judgment on the MSA, and the trial court denied her motion.
Gladys brings this mandamus proceeding, asking this court to compel the Honorable David Farr, presiding judge of the 312th District Court of Harris County, to enter a judgment consistent with the terms of the MSA. See Tex. Gov't Code Ann. § 22.221 (West Supp. 2017); see also Tex. R. App. P. 52. We conclude that the plain language of section 153.0071 does not permit the parties to the MSA to consent to revoking it, and we conditionally grant the petition for writ of mandamus.
I. BACKGROUND
Gladys and real party in interest Michael Sterling Alexander have a three-year-old child. Michael filed an original petition in a suit affecting the parent-child relationship. After Michael filed his petition, he and Gladys and their respective attorneys signed an MSA and filed it with the trial court on December 1, 2015. Under the MSA, Gladys and Michael were joint managing conservators, and Michael's possession of the child was unsupervised and similar to a standard possession order. Michael was to pay $1,300 per month in child support. The parties did not request the trial court to enter judgment on the MSA at that time. The court was not asked to enter temporary orders.
In January 2016, Michael filed a motion to enforce the MSA, and subsequently filed first and second amended motions to enforce the MSA, alleging that Gladys had failed to comply with the MSA by denying Michael possession of or access to the child. On March 28, 2016, Michael filed a motion to enter temporary orders consistent with the MSA.
On May 24, 2016, Gladys filed a motion for a temporary restraining order and an emergency motion to modify, requesting the trial court to (1) appoint her sole managing conservator; and (2) deny Michael possession of or access to the child. Gladys alleged that the child had welts across his back, and the child said Michael had hit him with a belt. On May 27, 2016, the trial court signed a temporary restraining order, prohibiting Michael from having possession of or access to the child and setting a date for a temporary orders hearing.
On June 7, 2016, Michael filed a petition to set aside the MSA and request for temporary orders, alleging that Gladys had failed to cooperate in obtaining a final order based on the MSA and Gladys had repeatedly violated the MSA. The parties' attorneys appeared before Judge Farr that same day and advised him that the parties had agreed to set aside the MSA. Gladys does not recall being at the June 7, 2016 hearing, and there is neither a record of the June 7, 2016 hearing nor a docket entry reflecting that the MSA was set aside. The parties never signed any document stating that they were setting aside the MSA.
The following day, on June 8, 2016, at a hearing on temporary orders before Associate Judge Eileen Gaffney, Gladys's attorney at that time, Stephanie Proffitt, advised Judge Gaffney that the parties had stipulated to set aside the MSA:
MS. PROFFITT: I think yesterday when we were down here, it was stipulated on the record that the mediated settlement agreement that the parties entered into back in November or December is set aside.
THE COURT: Does that sound correct?
MR. PLACZEK: Yes, Your Honor.
THE COURT: And I think y'all did that in front of Judge Farr?
MR. PLACZEK: Yes, Your Honor.
*450 At that hearing, the trial court entered "Band-Aid" temporary orders. On June 29, 2016, Gladys filed a motion to modify the Band-Aid orders based on newly discovered evidence, requesting that she be appointed sole managing conservator and Michael and his wife be denied possession of and access to the child.
On August 19, 2016, Judge Farr signed an agreed order for psychological examinations of Gladys and Michael to assist in his determination of which parent should have the exclusive right to determine the primary residence of the child. On November 22, 2016, Judge Farr signed agreed temporary orders, appointing Gladys and Michael temporary joint managing conservators and awarding Gladys the exclusive right to designate the primary residence of the child. The terms of the temporary orders were similar to those in the MSA, except that Michael's child support obligation was increased to $1,422.05 per month.
Gladys hired her current counsel on March 7, 2017, and counsel filed a motion for entry of judgment based on the MSA and also requested that all subsequent temporary orders, rule 11 agreements, and other court orders be vacated. On March 21, 2017, the trial court held a hearing on Gladys's motion for entry of judgment. At the hearing, Michael's counsel stipulated the MSA is valid and binding and "under normal circumstances [Gladys] would have an absolute right to enforce it," but contended that the parties had agreed to set aside the MSA.
Gladys testified at the hearing that she initially believed that the MSA was a final settlement of all issues, but came to believe it was no longer a final agreement because "we continued to come to court and it was continued [sic] to be litigated." Gladys stated that she did not recall being in front of Judge Farr on June 7, 2016, but she remembered being in front of Judge Gaffney the next day. Gladys stated that she did not agree to set aside the MSA, nor did she recall Proffitt informing Judge Gaffney that the MSA had been set aside the previous day. Proffitt testified that Gladys was in court on June 7, 2016, and that Judge Farr set aside the MSA.[1]
The trial court took Gladys's motion for entry of judgment on the MSA under advisement and, on April 27, 2017, signed an order denying the motion. Gladys filed her petition for writ of mandamus, asking this court to (1) set aside the April 27, 2017 order denying her motion for judgment on the MSA; and (2) direct the trial court to render judgment consistent with the terms of the MSA.
II. MANDAMUS STANDARD OF REVIEW
Generally, to be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. In re Nat'l Lloyds Ins. Co. , 507 S.W.3d 219, 226 (Tex. 2016) (orig. proceeding) (per curiam). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. In re H.E.B. Grocery Co. , 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); In re Cerberus Capital Mgmt., L.P. , 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). Mandamus relief is available when the trial court erroneously refuses to enter judgment *451 on a MSA. In re Lee , 411 S.W.3d 445, 450 n.7 (Tex. 2013) (orig. proceeding).
III. ANALYSIS
A. The MSA meets the requirements of Section 153.0071(d).
Gladys's sole issue presented is whether the trial court abused its discretion and violated the Family Code by refusing to render judgment on the parties' MSA, which complied with the Code's requirements. An MSA is binding on the parties if it meets all the requirements of Section 153.0071(d) of the Texas Family Code. See Tex. Fam. Code Ann. § 153.0071(d) (West 2014). An MSA is binding if it (1) states in boldfaced type or capital letters or underlined letters that the agreement is not subject to revocation; (2) is signed by each party to the agreement; and (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed. Id. If an MSA meets the requirements of section 153.0071(d), then a party is entitled to judgment on the MSA "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." Id. § 153.0071(e).
The MSA between Gladys and Michael provides that it is not subject to revocation:
AGREEMENT NOT SUBJECT TO REVOCATION
BY THEIR SIGNATURES BELOW, THE PARTIES HEREBY ACKNOWLEDGE THAT THE AGREEMENT REACHED IN THIS MEDIATION IS BINDING ON THE PARTIES AND IS NOT SUBJECT TO REVOCATION.
THIS AGREEMENT MEETS THE REQUIREMENTS OF SECTION 153.0071(d), TEXAS FAMILY CODE.
EACH PARTY UNDERSTANDS AND AGREES THAT THIS AGREEMENT IS NOT REVOCABLE AND THAT EACH INTENDS AND AGREES THAT EITHER PARTY SHALL BE ENTITLED TO JUDGMENT ON THIS AGREEMENT UNDER THE PROVISION OF THE LAW PURSUANT TO SECTIONS 153.0071 AND 6.602 TEXAS FAMILY CODE.
A PARTY TO THIS AGREEMENT IS ENTITLED TO JUDGMENT ON THE MEDIATED SETTLEMENT AGREEMENT.
The statement is in boldfaced type and capital letters and is underlined, and the parties and their attorneys signed the MSA. See Tex. Fam. Code Ann. § 153.0071(d). The MSA satisfies the requirements of section 153.0071(d) to constitute a binding MSA.
B. Section 153.0071 does not permit the parties to agree to set aside an MSA.
Michael contends that, even if an MSA complies with 153.0071, the parties, nonetheless, may agree to set aside the MSA. Resolution of this issue requires that we construe section 153.0071.
Questions of statutory construction are reviewed de novo. Levinson Alcoser Assocs. v. El Pistolon II, Ltd. , 513 S.W.3d 487, 493 (Tex. 2017). Our goal is to determine and give effect to the Legislature's intent. Pedernal Energy, LLC v. Bruington Eng'g, Ltd. , 536 S.W.3d 487, 491-93, 2017 WL 1737920, at *4 (Tex. 2017). "When statutory text is clear, we do not resort to rules of construction or extrinsic aids to construe the text because the truest measure of what the Legislature intended is what it enacted." Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp. , 520 S.W.3d 887, 893 (Tex. 2017). Words in the statute are given their ordinary *452 and plain meaning. Marino v. Lenoir , 526 S.W.3d 403, 409 (Tex. 2017).
We construes statute so that no part is surplusage, but so that each word has meaning. Pedernal Energy, LLC , 536 S.W.3d at 491-93, 2017 WL 1737920, at *4. There is a presumption that "the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." ExxonMobil Pipeline Co. v. Coleman , 512 S.W.3d 895, 899 (Tex. 2017) (per curiam) (internal quotations and citations omitted). "We also take statutes as we find them and refrain from rewriting text chosen by the Legislature." Pedernal Energy, LLC , 536 S.W.3d at 492, 2017 WL 1737920, at *4.
An MSA "is binding on the parties" if it satisfies the three enumerated requirements found in section 153.0071(d), and a party is entitled to judgment on the MSA. Tex. Fam. Code Ann. § 153.0071(d), (e). The version of section 153.0071(e-1) in effect at the time the trial court denied Gladys's motion on entry of judgment provided that the trial court could deny judgment on an MSA only if (1) a party to the MSA was a victim of family violence, and that circumstance impaired the party's ability to make decisions; and (2) the MSA is not in the child's best interest.[2] The Legislature has since amended section 153.0071(e-1) to allow the trial court to deny entry of judgment on an MSA where the MSA permits a person subject to the sex-offender registration statute or who has a history of past or present physical abuse directed at any person to reside in the same household as the child or have unsupervised access to the child and the MSA is not in the child's best interest.
The Legislature has provided no other circumstances under which the trial court may refuse to enter judgment on the MSA. If the Legislature had intended to permit the parties to agree to set aside an MSA, which meets all requirements that make the MSA binding, the Legislature could have included such an exception in section 153.0071, but chose not to do so. See ExxonMobil Pipeline Co. , 512 S.W.3d at 899 (presuming that the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted). To allow the parties to agree to set aside an irrevocable MSA would render meaningless subsection (e), which provides that "a party is entitled to judgment on the mediated settlement agreement not withstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." See Pedernal Energy, LLC , 536 S.W.3d at 491-93, 2017 WL 1737920, at *4 (stating that the courts must construe statutes so that no part is surplusage, but so that each word has meaning).
We conclude that section 153.0071 does not allow the parties to agree to set aside the MSA.
C. Assuming disputed issues of material fact regarding whether the parties agreed or the judge pronounced from the bench that the MSA was set aside, the statute does not permit the parties to agree or the judge to set aside the MSA.
Michael asserts that there is at least a fact issue regarding whether the parties agreed to set aside the MSA, which this court cannot address in a mandamus proceeding. See In re Angelini , 186 S.W.3d 558 (Tex. 2006) (orig. proceeding) (stating that an appellate court may not decide *453 disputed fact issues in an original mandamus proceeding). At the March 21, 2017 hearing, Gladys testified that she did not agree to set aside the MSA. Michael presented an excerpt of the reporter's record of the June 8, 2016 hearing conducted by Judge Gaffney where Gladys's former attorney, Stephanie Proffitt, advised Judge Gaffney the parties had agreed to set aside the MSA and that Judge Farr had, in fact, set it aside.
At the March 21, 2017 hearing and after hearing testimony and argument about whether the MSA had been set aside in 2016, Judge Farr stated,
... maybe this is what was said on June 7th, but nobody knows. If the parties came in front of me and said, I want to set aside our MSA, I don't know that I would go, hunky-dunky. I would just kind of go, well, I don't have anything to say about that, you guys either ask for judgment on your MSA or you don't ask for judgment. And if you don't ask for judgment and we kick that can down the road, I'm going to continue as a judge to respond to the affirmative relief that you're asking me for in any other capacity, including temporary orders.
We need not decide disputed issues of material fact in this mandamus proceeding. Even if Michael and Gladys agreed or the judge pronounced from the bench that the MSA was set aside, as discussed above, the express language of the statute provides that a party is entitled to judgment on an otherwise statutorily compliant MSA "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." Tex. Fam. Code Ann. § 153.0071(e). Therefore, the statute does not allow the parties to agree to revoke an MSA that satisfies the requirements of section 153.0071(d), nor does it allow a judge to set aside an MSA in accordance with the parties' agreement.
D. Gladys did not invite the trial court to make a ruling which she complains about in this original proceeding.
Michael argues that Gladys is precluded from asking the trial court to make a specific ruling and then complaining about the ruling to the appellate court. Under the invited error doctrine, a party is estopped from challenging a trial court's ruling on appeal if the complaining party requested the specific action taken by the trial court. Tittizer v. Union Gas Corp. , 171 S.W.3d 857, 862 (Tex. 2005) ; see also Gordon v. Gordon , 14-10-01031-CV, 2011 WL 5926723, at *7 (Tex. App.-Houston [14th Dist.] Nov. 29, 2011, no pet.).
Michael contends that the invited error doctrine applies because before Gladys asked the trial court to enforce the MSA, she agreed to set it aside in June 2016. He also argues that Gladys invited error when she filed a motion for a temporary restraining order and an emergency motion to modify, alleging changed circumstances and asking the trial court to (1) appoint her sole managing conservator; and (2) deny Michael possession of and access to the child. On May 27, 2016, the trial court issued the temporary restraining order. Therefore, Michael posits that Gladys was seeking relief inconsistent with the terms of the MSA, but now she seeks a judgment consistent with the MSA, which would provide Michael with unsupervised possession of and access to the child.
We reject these arguments because Gladys does not complain about the court's setting aside the MSA or granting the temporary restraining order in 2016. Instead, Gladys complains about the trial court's April 27, 2017 denial of her motion for entry of judgment.
The dissent argues that the invited error doctrine is to be construed *454 broadly, but cites no cases applying the doctrine to a ruling other than the ruling complained of by the appellant on appeal. Thus, Gladys did not invite error by asking the trial court to enter judgment on the MSA; indeed, as explained above, the court lacked the power to do otherwise. The invited error doctrine is not applicable to this case.[3]
E. In re Lee does not permit the parties to agree to set aside an MSA.
Michael argues that the Texas Supreme court in In re Lee left open the possibility that a trial court may properly refuse to enter judgment on an MSA that complies with section 153.0071. In Lee , the court observed that several courts of appeals had addressed the issue of whether section 153.0071 mandates entry of judgment on a statutorily compliant MSA "under any and all circumstances," including where the MSA was "illegal," or was "procured by fraud, duress, coercion, or other dishonest means." 411 S.W.3d at 455 n.10. The court, however, declined to address that issue because it was not presented there. Therefore, we do not read Lee as leaving the door open to refuse to enter judgment on a statutorily compliant MSA. As in Lee , there are no allegations here of illegality or of facts that would preclude the formation of an agreement. Cf. In re Kasschau , 11 S.W.3d 305, 314 (Tex. App.-Houston [14th Dist.] 1999, orig. proceeding) (holding trial court did not abuse its discretion by refusing to render judgment on MSA requiring illegal destruction of evidence). Therefore, Lee does not support Michael's position.[4]
IV. CONCLUSION
Having determined that section 153.0071 does not permit the parties to an otherwise binding MSA to agree to set it aside, we conclude that the trial court abused its discretion by denying Gladys's motion to enter judgment on the MSA. Because the refusal to grant judgment on a mediated settlement is the proper subject of a mandamus proceeding, we conditionally grant Gladys's petition for writ of mandamus. We direct the trial court to vacate its April 27, 2017 order denying Gladys's motion for entry of judgment, and enter judgment in accordance with the MSA. The writ will issue only if the trial court fails to act in accordance with this opinion. We also lift our stay entered on June 2, 2017.
Kem Thompson Frost, Chief Justice, Dissenting
DISSENTING OPINION
The relator comes to this court seeking a writ of mandamus to compel the trial judge to enforce a mediated settlement agreement the trial judge set aside at the relator's urging, after the relator reaped the benefits of the ruling. The doctrines of *455 quasi-estoppel and invited error demand that this court deny the relator's petition for extraordinary relief. Because the majority instead conditionally grants it, I respectfully dissent.
INDEPENDENT GROUNDS FOR DENYING MANDAMUS RELIEF
This court need not reach the merits of relator Gladys Minix's petition for extraordinary relief or address whether section 153.0071(d) of the Texas Family Code permits Minix and real party in interest Michael Sterling Alexander to agree to set aside their mediated settlement agreement. Nor does this court need consider whether that statutory provision applies to today's case. The quasi-estoppel and invited-error doctrines provide independent grounds for denying mandamus relief. So, even if the parties could not do what they did under the law, and even if the trial court's ruling did not comport with the statute, Minix still would not be entitled to mandamus relief.
EQUITABLE PRINCIPLES AS A BASIS FOR DENYING MANDAMUS RELIEF
Appellate courts do not issue the extraordinary remedy of mandamus as a matter of right but rather grant this relief at their discretion.[1] Although mandamus is a common-law remedy, a court determines whether to grant mandamus relief by drawing on equitable principles.[2] In deciding whether to order mandamus relief, an appellate court may consider equitable matters that go beyond the mere legal right of the relator.[3] The doctrines of quasi-estoppel and invited error-both species of estoppel-operate in equity to bar Minix from speaking against her own actions, statements, and litigation positions in seeking mandamus relief in this court.
Minix's Actions, Statements, and Litigation Positions
Minix and Alexander agreed that their meditated settlement agreement governing custody of their three-year-old child should be set aside. While represented by counsel, each parent stipulated to this position in open court. Then, the two asked the trial court to set aside their mediated settlement agreement. And, the trial court did. Minix wanted more rights to the child than the mediated settlement agreement provided, so she asked the trial court to give her more rights. And, the trial court did. Minix did not want Alexander to have what the mediated settlement agreement gave him, so Minix asked the trial court to give him less. And, the trial court did.
Minix's Acceptance of Benefits
Minix enjoyed the rights the trial court gave her (and the elimination of the rights Alexander would have had under the mediated settlement agreement) for more than nine months as the parties litigated over conservatorship and possession of their child. During that time Minix did not mention the mediated settlement agreement, even though it addressed those issues. Minix did not make any of the arguments she now makes in this court. Instead, she accepted the benefits of the temporary orders the trial court granted at her urging-relief that gave her greater rights and Alexander lesser rights, relief that was not consistent with the parties' mediated settlement agreement, and relief the trial judge surely would not have granted *456 if the trial judge had not set aside the mediated settlement agreement at the parties' request and let them litigate instead.
On November 22, 2016, almost a year after the parties signed the mediated settlement agreement, Associate Judge Eileen Gaffney signed temporary orders. Even presuming that the provisions of these temporary orders mirrored the terms of the mediated settlement agreement, the provisions of the temporary orders do not determine what the final order will be, and according to Alexander's live pleading, Alexander expects to prove at trial that he should get sole managing conservatorship of the child and that Minix should pay child support. In addition, by the time the associate judge issued the temporary orders, the parties had engaged in substantial litigation and had spent lots of time and money-resources the parties would not have expended had they not agreed to set aside aside the mediated settlement agreement.
Trial Court's Action in Response to Minix's Specific Request
Though the record contains no written order or statements of the trial court setting aside the mediated settlement agreement, Minix's own lawyer testified under oath that the trial court did just that. The record reflects that, on June 7, 2016, the respondent, The Honorable David Farr, held a hearing on Minix's emergency motion to modify (in which Minix sought relief inconsistent with the mediated settlement agreement) and on Alexander's petition to set aside the mediated settlement agreement and request for temporary orders. At that hearing, Minix and Alexander stipulated in open court that the mediated settlement agreement was set aside. Minix' s counsel, recounting what occurred at the June 7, 2016 hearing, testified under oath on March 21, 2017, that (1) Judge Farr pronounced from the bench that he was setting aside the mediated settlement agreement; (2) Minix was present in the courtroom when the judge made the pronouncement; and (3) Minix's counsel at the time (Stephanie Proffitt) understood that Judge Farr had set aside the mediated settlement agreement on June 7, 2016. The sworn testimony of Minix's own lawyer raises a fact issue as to whether the trial court, from the bench, set aside the mediated settlement agreement that day, and this court is to presume that the trial court credited this testimony.[4]
After Judge Farr set aside the mediated settlement agreement in open court, at the parties' urging and in keeping with their stipulation, Judge Farr took actions inconsistent with the mediated settlement agreement still being in effect. Chief among these was sending the parties to Associate Judge Gaffney for temporary orders, which, of course, would not have been necessary had the parties sought to enforce the mediated settlement agreement that covered the conservatorship and possession issues that were to be the subject of the temporary orders.
At the temporary-orders hearing the next day (June 8, 2016), Judge Gaffney asked the parties if they had any agreement as to conservatorship. Under the mediated settlement agreement, the parties had agreed that each parent would be a joint managing conservator. Nonetheless, each party's lawyer responded to Judge Gaffney's inquiry by saying that each parent was seeking to be appointed sole managing conservator, effectively communicating that they had no agreement as to *457 conservatorship. Minix sought sole managing conservatorship and urged Judge Gaffney to order that Alexander's possession be supervised. The parties then went forward with temporary orders. This evidence shows that the parties' actions were in accord with the parties' stipulation and with the trial court having set aside the mediated settlement agreement, just as Minix's then-lawyer (Proffitt) testified.
Consistent with the setting aside of the mediated settlement agreement, the trial court then allowed litigation to continue. The parties' conduct strongly suggests that the trial court, in fact, set aside the mediated settlement agreement. Nothing else would explain what followed.
• If the trial court did not set aside the mediated settlement agreement, why did the parties appear before Judge Gaffney for a temporary-orders hearing and tell the court that the parties had no agreement as to conservatorship?
• Why did the parties need temporary orders if they had an agreement that resolved everything?
• If the trial court did not set aside the mediated settlement agreement, why would the parties have been litigating matters that the mediated settlement agreement covered?
• If the trial court did not set aside the mediated settlement agreement, why did the parties not seek its enforcement and thus put an end to the dispute?
• If the mediated settlement agreement resolved the conservatorship and possession issues and was in effect, why did the parties, the lawyers, and the trial judge spend ten months litigating those issues?
Minix's U-Turn at the End of the Road
The parties spent fifteen months in litigation, fighting over issues addressed in the mediated settlement agreement. At the end of the road, Minix made a u-turn, completely changing her position. She no longer wanted to set aside the mediated settlement agreement. Even though the parties had stipulated to it-and even though the trial court had done what Minix asked and ruled in accordance with her stipulation-Minix asked the trial court to undo the ruling and to render judgment on the mediated settlement agreement, a request that clashed with her pleadings, her arguments, her claims, and her actions up to that point.
No Abuse of Discretion in Refusing to Undo the Granting of Minix's Requested Relief
Having set aside the mediated settlement agreement at the parties' urging almost a year before and having granted Minix relief inconsistent with it, the trial court did not abuse its discretion on April 27, 2017, when the trial court denied Minix's request for rendition of judgment based on the mediated settlement agreement. Minix now seeks mandamus relief from this court compelling the trial judge to render a judgment consistent with the terms of the mediated settlement agreement.
Mandamus Relief Unwarranted Even in the Face of a Compliant Mediated Settlement Agreement
The majority does not look to equitable principles in deciding today's case. Instead, the majority focuses on whether the mediated settlement agreement satisfies the statutory requirements for enforcement. In doing so, the majority misses the mark.
*458 On today's facts, equity outruns statutory compliance.
The majority bases today's holding on the mediated settlement agreement's compliance with section 153.0071.[5] But, compliance with the statute is not the only issue. A statute's mandate alone does not determine the course. Other forces of law and equity are at work. For example, this court would not reverse a trial court judgment and render judgment enforcing a compliant mediated settlement agreement if we lacked jurisdiction over a case because of a late-filed notice of appeal.[6] Nor would this court reverse a trial court for failing to render judgment on a mediated settlement agreement if its proponent did not first ask the trial court to do so.[7] And, this court should not grant mandamus relief today because equitable principles preclude the granting of relief.
Quasi-Estoppel
The doctrine of quasi-estoppel bars a party from asserting, to another's disadvantage, a right inconsistent with a position earlier taken.[8] Quasi-estoppel applies if it would be unconscionable to allow a person to assert, to another's disadvantage, a right at odds with a position to which the person earlier had acquiesced, or from which the person had accepted a benefit.[9] Under supreme-court authority, Texas courts may invoke estoppel to deny mandamus relief in cases like this one, in which the petitioner seeks to avoid an agreement with the opposing party after the proceedings turn adverse.[10]
Texas cases present the following familiar fact pattern that shows how equity steps in to bar relief that the remedy of mandamus might otherwise afford:
• The relator and the real party in interest agree to handle a matter contrary to the law.
• Then, after losing, the relator seeks mandamus relief to compel the result the law would demand, a result that goes against the parties' agreement.
• The appellate court refuses to grant mandamus relief, holding that the equitable doctrine of estoppel bars it.[11]
*459 Today's case falls squarely within the estoppel-bars-mandamus-relief mold. True to it, after losing in the trial court in her belated attempt to enforce the mediated settlement agreement, Minix now seeks to compel the result she claims the law demands-enforcement of the mediated settlement agreement. This court should stay true to the governing case law and hold that equitable principles of estoppel bar mandamus relief.[12]
The parties filed the mediated settlement agreement with the trial court in December 2015. Three months later, in March 2016, Alexander filed a motion seeking temporary orders governing possession and conservatorship of the parties' child. The orders Alexander sought were consistent with the mediated settlement agreement. Minix objected. She did not want what the mediated settlement agreement gave her, nor did she want Alexander to have what the mediated settlement agreement gave him. So, in May 2016, Minix sought a temporary restraining order and filed an emergency motion to modify,[13] requesting the trial court to (1) appoint her sole managing conservator; and (2) deny Alexander possession of or access to the child-relief at odds with the parties' mediated settlement agreement. When Minix filed this motion, no court had signed an order as to conservatorship of the parties' child. Indeed, the respondent judge had not even signed temporary orders in this original suit affecting the parent-child relationship. In response to Minix's motion to modify, the trial court signed a temporary restraining order prohibiting Alexander's possession and access to the child. With this ruling, Minix got what she requested-and what she got conflicted with what she would have gotten under the mediated settlement agreement. (The mediated settlement agreement would have given Alexander possession and access to the child.) Minix did not object to the trial court going outside the mediated settlement agreement, nor did Minix ask the trial court to enforce the mediated settlement agreement. Instead, Minix sought and received relief that clashed with the mediated settlement agreement.
After Minix signed the mediated settlement agreement and both parties filed it with the trial court in December 2015, Minix did not seek rendition of judgment on the agreement for more than fifteen months. During the interim she enjoyed the benefits of temporary orders that (1) gave her rights the mediated settlement agreement did not give her and (2) took away rights the mediated settlement agreement gave Alexander.
Now, Minix asserts the trial court abused its discretion in refusing to grant the relief she requested in March 2017, yet by the time Minix asked the trial court to take the enforce-the-mediated-settlement-agreement path, she had been leading the trial court in the opposite direction for ten months, getting just what she asked for when she asked for it. Through counsel, the parties agreed in open court that the mediated settlement agreement should be *460 set aside, and the trial court determined in open court that the agreement would be set aside. Building on that relief, Minix then sought and received what she could not have gotten under the mediated settlement agreement. Minix even agreed that trial on the merits of her petition seeking relief inconsistent with the mediated settlement agreement should be continued until April 2017, and in December 2016, the trial court granted this relief, too.
In seeking mandamus relief, Minix argues that the mediated settlement agreement cannot be set aside even if she and Alexander agreed to set it aside, yet in June 2016, she induced the trial court to set aside the mediated settlement agreement by arguing the opposite. The trial judge set aside the mediated settlement agreement in reliance upon the parties' stipulation. The trial court let them litigate the issues. Only after Minix became unhappy with the results of that litigation-and apparently preferred to return to the terms of the mediated settlement agreement-did she request the trial court to enforce it.
Our mandamus record contains evidence of the crucial touchstones of quasi-estoppel-Minix's unconscionable assertion, to Alexander's disadvantage, of a right inconsistent with a position to which Minix earlier had acquiesced, and from which Minix had accepted benefits.[14] After stipulating that the mediated settlement agreement should be set aside and obtaining a ruling to this effect from the trial court, Minix litigated for ten months about conservatorship and possession-issues covered by the mediated settlement agreement, never once seeking to enforce the contract she asked the trial court to set aside, and all the while seeking and accepting conservatorship and possession rights in temporary orders she never could have obtained without walking away from the mediated settlement agreement she now asks this court to enforce via mandamus. Having accepted those benefits, Minix cannot now avoid her stipulation with Alexander to set aside the mediated settlement agreement.[15]
The majority asserts that the record does not show that enforcing the mediated settlement agreement at this juncture "would be to [Alexander's] disadvantage."[16] The record amply shows the hardship. As Minix's lawyer accurately pointed out at the March 21, 2017 hearing, between the execution of the mediated settlement agreement in December 2015 and Minix's filing of her "Motion for Entry of Judgment" in March 2017, "there were several orders and lots of court proceedings and an amicus appointed, and [a] psychological evaluation conducted, a lot of other things, a lot of money, time[,] and expense on this case." Wasting all of the time and money Alexander invested in this litigation would be to Alexander's disadvantage. The majority points to nothing that would show otherwise.
The majority also asserts that since November 22, 2016, almost a year after the parties signed the mediated settlement agreement, the terms of the temporary orders resemble the terms of the mediated settlement agreement.[17] But, these terms do not fix the terms of the final order. Trial determines that. And, according to Alexander's live pleading, Alexander expects to prove at trial that he is entitled to sole managing conservatorship of his son and to child support from Minix.
*461 Under these circumstances, it would be unconscionable to allow Minix to assert, to Alexander's disadvantage, that the parties could not validly have agreed to set aside the mediated settlement agreement, a position at odds with Minix's prior position, from which Minix accepted benefits.[18] The doctrine of quasi-estoppel forecloses mandamus relief.[19]
Invited Error
Another species of estoppel-the invited-error doctrine-provides an alternative basis for denying Minix mandamus relief. Minix complains that the trial judge erred in refusing to undo an action the parties asked the trial judge to take, and so invited the error of which she now complains.[20] The invited-error doctrine applies to situations in which a party asks the court to make a specific ruling or take a specific action, and then complains of that ruling or action on appeal.[21] The concept is a simple one: If a party induces trial court action, that party cannot later run to the court of appeals complaining of that action.
Texas courts apply the invited-error doctrine across a wide array of scenarios to preclude parties from complaining in the court of appeals about the very things they brought about in the trial court.[22] For example, a party invites error by persuading a trial judge to adopt a jury charge that the party later alleges supports an improper theory of recovery.[23] The doctrine encompasses scenarios just like the one in today's case, where a party seeks a particular action in the trial court and then after getting it, denounces it as error in the court of appeals.[24]
The majority narrowly frames the invited-error doctrine,[25] holding that Minix did not invite error because she is not complaining of a specific ruling she asked the trial court to make.[26] Citing Tizzier v. Union Gas Corp. ,[27] the majority notes that "under the doctrine of invited error, a party is estopped from challenging a trial court's ruling on appeal if the complaining *462 party requested the specific action taken by the trial court."[28] Texas jurisprudence shows that the invited-error doctrine is broader than the majority suggests.[29] Texas courts have phrased the invited-error requirements in various ways, at times more broadly than in Tizzier .[30] In Hodges , for example, the Supreme Court of Texas explained the principle in expansive terms: "[a] litigant cannot ask something of a court and then complain that the court committed error in giving it to him."[31] There is no denying that Minix asked the trial court for specific relief that the trial court granted and now, in the court of appeals, she faults the trial court for granting it.
The premise of Minix's request for relief is that the trial court erred in not enforcing the mediated settlement agreement she asked the trial court to set aside. The case law is clear: If a party asks the trial court to take an action, the party will not be permitted to challenge that action in the court of appeals.[32] If the invited-error doctrine were as narrow as the majority suggests, a party could dodge the consequences of inviting error simply by asking the trial court to rule on an issue, obtaining the requested ruling, filing a motion to reconsider, and then appealing the denial of the motion to reconsider. Under this hypothetical, the trial court properly would have denied the motion to reconsider because the motion was inconsistent with relief the party already had requested, but an appellate court operating under the majority's view, might conclude that the party had not invited error "on a specific ruling" and reverse the trial court.[33] The supreme court has looked to the purposes and principles of the invited-error doctrine, recognizing the conduct and harm it is intended to thwart, and evaluating the substance of the party's actions rather than slicing the doctrine narrowly, viewing it technically, or applying it rigidly.
The invited-error doctrine recognizes the unfairness-to both the trial court and to the opposing party-of allowing a party to change positions upon arrival in the court of appeals, especially after that party has reaped the benefits of an opposite trial-court position and consumed judicial resources inducing the trial court to do the thing now sought to be undone.
The order Minix appeals is like a motion to reconsider in that Minix stipulated as part of a joint stipulation to set aside the mediated settlement agreement, the trial judge did set it aside, and then Minix later sought to enforce the set-aside agreement. Even though Minix asked the trial court to set aside the mediated settlement agreement, she made a U-turn when she later deemed it more advantageous to return to the mediated settlement agreement.
Grounded in even justice and dictated by common sense,[34] the invited-error doctrine promotes the sound administration of law.[35] Properly applied, it prevents gamesmanship, unfairness, and surprise and deters waste of time, money, and judicial *463 resources. Minix has engaged in the very gamesmanship the invited-error doctrine is designed to stop. Having invited the alleged error, Minix should not now be heard to complain of it.
CONCLUSION
This court need not reach the merits of Minix's petition for extraordinary relief because principles of quasi-estoppel demand this court deny mandamus relief. Alternatively, Minix invited the error she asks this court to correct by mandamus. The record shows the parties' stipulation and the trial court's responsive action. And, the parties' post-stipulation actions conformed not only to the stipulation but also to Minix's lawyer's testimony and to the trial court's reported ruling from the bench. That, too, raises a fact issue that should preclude the granting of any mandamus relief. The majority does not explain why it concludes otherwise.
Courts grant mandamus relief to remedy wrongs, not to promote them.[36] In granting mandamus relief the majority sanctions the very conduct the quasi-estoppel and invited-error doctrines are supposed to thwart. Because principles of estoppel embodied in both doctrines bar mandamus relief in this context, this court need not analyze section 153.0071(d) of the Family Code or its potential application to today's case.[37] This court instead should hold that estoppel principles foreclose mandamus relief.

Proffitt testified on March 21, 2107, in part:
Q: On June 7th do you believe that Judge Farr had set aside the [MSA]?
A: That was his pronouncement from the bench.

Act of June 18, 2005, 79th Leg., R.S., ch. 916, § 7, 2005 Tex. Gen. Laws 3148, 3150, amended by Act of May 23, 2017, 85th Leg., R.S., ch. 99, § 2, 2017 Tex. Sess. Law Serv. 821, 821 (West).

The dissent also argues the doctrine of quasi-estoppel bars Gladys's request for mandamus relief. The doctrine of quasi-estoppel bars a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. Samson Expl. LLC v. T.S. Reed Props., Inc. , 521 S.W.3d 766, 778 (Tex. 2017) ; see post , at 458-59 (Frost, C.J., dissenting). Even if this un-briefed argument were before us, Michael has not shown that enforcing the MSA would be to his disadvantage. The terms of the MSA were similar to those of the November 22, 2016 temporary orders, and Michael's child support obligation was less in the MSA. The dissent may believe the May 2016 temporary restraining order that Gladys sought was unfavorable to Michael, but Gladys does not challenge that order in her petition.

Michael further argues that prohibiting presumably fit parents from agreeing to revoke a statutorily compliant MSA would be unconstitutional. Michael did not raise this issue in the trial court, and we do not address it here.

The parties have stipulated that the MSA at issue is binding.

We need not decide in this case whether there are some circumstances in which a party could waive its "entitle[ment] to judgment on" a binding MSA. Tex. Fam. Code Ann. § 153.0071(e). The statute makes clear that the parties cannot waive that entitlement by subsequent agreement.

Although the dissent presents the doctrines of quasi-estoppel and invited error as equitable bases for denying mandamus relief, they would apply equally on appeal. E.g., Tittizer v. Union Gas Corp. , 171 S.W.3d 857, 862 (Tex. 2005) (invited error); Davis-Lynch, Inc. v. Asgard Techs., LLC , 472 S.W.3d 50, 67-68 (Tex. App.-Houston [14th Dist.] 2015, no pet.) (quasi-estoppel).

Michael's counsel did use the word "estoppel" once in a hearing, but he did not explain the type of estoppel to which he referred. Counsel's statement that "you can't ask for two things at the same time," and his later argument that his client detrimentally relied on "the assumption that [the MSA] had been set aside," would not suggest to the trial court that he was addressing quasi-estoppel. See Lopez v. Munoz, Hockema & Reed, L.L.P. , 22 S.W.3d 857, 864 (Tex. 2000) ("Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." (emphasis added) ); Freezia v. IS Storage Venture, LLC , 474 S.W.3d 379, 387 (Tex. App.-Houston [14th Dist.] 2015, no pet.) ("A party need not show ... detrimental reliance in order to prove the affirmative defense of quasi-estoppel.").

See Tex. Fam. Code Ann. § 153.0071(d) (West, Westlaw through 2017 1st C. S.).

See Fleming & Assocs. v. Kirklin , No. 14-16-00752-CV, 2016 WL 6885967, at *1-2 (Tex. App.-Houston [14th Dist.] Nov. 22, 2016, pet. denied) (mem. op., per curiam).

See Tex. R. App. P. 33.1(a) ; First Nat. Bank of Beeville v. Fojtik , 775 S.W.2d 632, 633 (Tex. 1989).

Curry v. Pickett , No. 14-09-00188-CV, 2010 WL 3353952, at *4 (Tex. App.-Houston [14th Dist.] Aug. 26, 2010, no pet.) (mem. op.).

See itation index="41" url="https://cite.case.law/citations/?q=2010%20WL%203353952">id.

See Pendleton v. Pace , 9 S.W.2d 437, 440 (Tex. Civ. App.-Texarkana 1928, writ ref'd) (holding that candidate who entered into agreement with rival candidate to set aside result of first primary and resubmit nomination was estopped to claim nomination under first primary, after result of second proved adverse). In cases decided after June 14, 1927, the Supreme Court of Texas's notation of "writ refused" or "petition refused" denotes that the court of appeals's opinion is the same as a precedent of the Supreme Court of Texas. See Yancy v. United Surgical Partners Int'l, Inc. , 236 S.W.3d 778, 786 n. 6 (Tex. 2007).

See Pendleton , 9 S.W.2d at 440 (holding that candidate who entered into agreement with rival candidate to set aside result of first primary and resubmit nomination (an action not provided for by applicable law) was estopped to claim nomination under first primary, after result of second proved adverse); Robinson v. Plano Board of Educ. , 514 S.W.2d 135, 136-38 (Tex. Civ. App.-Dallas 1974, orig. proceeding) (holding that relator, a candidate who entered into agreement with rival candidate to have a recount conducted (an action relator alleged was contrary to an applicable statute), was estopped to claim he had won election, after the result of the recount proved adverse).

See Rivercenter Assocs. , 858 S.W.2d at 367 ; Pendleton , 9 S.W.2d at 440 ; Robinson , 514 S.W.2d at 136-38.

Though Minix did not state in her emergency motion what she sought to modify, the only document governing the parties' conservatorship and possession of the child was the mediated settlement agreement, and it is obvious from Minix's motion that she did not want the court to order the conservatorship-and-possession terms the parties set out in their mediated settlement agreement.

See Curry , 2010 WL 3353952, at *4.

See Pendleton , 9 S.W.2d at 440 ; Robinson , 514 S.W.2d at 136-38.

Ante at 455, n.3.

See ante at 455, n.3.

See Curry , 2010 WL 3353952, at *4.

See Rivercenter Assocs. , 858 S.W.2d at 367 ; Pendleton , 9 S.W.2d at 440 ; Curry , 2010 WL 3353952, at *4 ; Robinson , 514 S.W.2d at 136-38.

See Kupersmith v. Weitz , No. 14-05-00167-CV, 2006 WL 3407832, at *3 n.2 (Tex. App.-Houston [14th Dist.] Nov. 28, 2006, no pet.) (mem. op) (noting that reversal would conflict with invited-error doctrine because court rendered judgment in reliance on stipulation that the parties sought to enforce rather than rescind settlement agreement).

See In re Dep't of Family & Protective Servs. , 273 S.W.3d 637, 646 (Tex. 2009) ; Houston Laureate Assocs., Ltd. v. Russell , 504 S.W.3d 550, 567 (Tex. App.-Houston [14th Dist.] 2016, no pet.) (holding that under invited-error doctrine, a party that requests a specific action in trial court cannot complain on appeal that trial court erred in granting that request); Gordon v. Gordon , No. 14-10-01031-CV, 2011 WL 5926723, at *7 (Tex. App.-Houston [14th Dist.] Nov. 29, 2011, no pet.) (mem. op.).

See Spence v. State Nat. Bank of El Paso , 5 S.W.2d 754, 756 (Tex. 1928)

See United Scaffolding, Inc. v. Levine , No. 15-0921, 537 S.W.3d 463, 481-82, 2017 WL 2839842, at *12 (Tex. June 30, 2017) ; Del Lago Partners v. Smith , 307 S.W.3d 762, 775 (Tex. 2010).

See Del Lago Partners , 307 S.W.3d at 775 (holding that petitioner was barred from obtaining reversal on appeal on the ground that the jury should have decided the case under a liability theory that petitioner itself persuaded the trial court not to submit to the jury); Houston Laureate Assocs. , 504 S.W.3d at 567 ; Gordon , 2011 WL 5926723, at *7.

See ante at 459-60.

See ion index="66" url="https://cite.case.law/citations/?q=2010%20WL%203353952">id.

171 S.W.3d 857 (Tex. 2005).

See ante at 460.

See Kupersmith , 2006 WL 3407832, at *3 n.2.

Compare People's State Bank of Tyler v. Monsey Oil Co. , 11 S.W.2d 507, 511 (Tex. Comm'n App. 1928, judgm't approved)with Tittizer , 171 S.W.3d at 862.

Northeast Tex. Motor Lines v. Hodges , 138 Tex. 280, 158 S.W.2d 487, 488 (1942).

Houston Laureate Assocs. , 504 S.W.3d at 567 ; Gordon , 2011 WL 5926723, at *7.

See ante at 459-60.

Northeast Tex. Motor Lines , 158 S.W.2d at 488.

Spence , 5 S.W.2d at 756.

Moore , 59 S.W.2d at 818.

See Rivercenter Assocs. , 858 S.W.2d at 367 ; Pendleton , 9 S.W.2d at 440 ; Houston Laureate Assocs. , 504 S.W.3d at 567-68 ; Gordon , 2011 WL 5926723, at *7 ; Curry , 2010 WL 3353952, at *4 ; Robinson , 514 S.W.2d at 136-38.