**Affirmed and Memorandum Opinion filed March 9, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00042-CV

### SIGNAD, LTD., Appellant

### V.

### DW PR/MARKETING, MEDIA & PUBLIC RELATIONS, LLC D/B/A WICKED PUBLICITY AND BIJ MOTORS TX, LLC D/B/A MERCEDES BENZ OF THE WOODLANDS, Appellees

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-33888**

## MEMORANDUM OPINION

In this breach of contract case SignAd appeals a judgment following a bench trial. In three issues SignAd argues (1) the trial court erred in finding that DW PR/Marketing, Media & Public Relations, LLC ("Wicked Publicity") was not an agent of BIJ Motors TX, LLC d/b/a Mercedes-Benz of the Woodlands ("Mercedes") in signing the advertising contracts; (2) if Wicked Publicity was not an agent of Mercedes the trial court erred in finding that the advertising contracts are valid and

enforceable; and (3) if the contracts were not valid and enforceable the trial court erred in finding that SignAd was not entitled to recover in quantum meruit. Concluding there is sufficient evidence to support the trial court's judgment, we affirm.

## BACKGROUND

When Mercedes planned to open a car dealership in the Woodlands, Robert Milner, Mercedes' general manager, sought billboard advertisements on nearby roadways. Mercedes paid Wicked Publicity a flat fee each month for general public relations and event planning. When Milner mentioned his interest in billboard advertising to Donna Wick, Wicked Publicity's owner, Wick had advertisements for her PR firm on several billboards and represented to Milner that she owned one of the billboards. Wick told Milner that her firm would contract with Mercedes to place Mercedes' advertisements on the billboards. Milner testified that Wicked Publicity would contract with the billboard company and Mercedes would pay Wicked Publicity to sublease the billboards. According to Milner this arrangement allowed Mercedes flexibility to move its billboards to different locations as opposed to contracting directly with the billboard company.

Milner testified that he submitted an email inquiry directly to SignAd but never spoke with anyone at SignAd directly. Milner testified that he "sent an e-mail to every billboard company in Houston asking them for information about billboards," but decided that he would rather work through Wicked Publicity than directly with the sign companies. Milner testified that Wick through Wicked Publicity "held the contract" on the billboard and he subleased it from Wicked Publicity. Mercedes eventually contracted with Wicked Publicity for two billboards, for which Mercedes paid Wick in addition to the monthly flat fee for advertising services. Milner testified that he did not believe that Mercedes had any responsibility

2

to SignAd directly and that no one ever suggested that it did. Mercedes never signed any of the contracts with SignAd nor did it sign an "agency of record" letter giving Wick or Wicked Publicity authority to bind Mercedes to the contracts. Mercedes never authorized Wick to sign a contract on its behalf or authorize Wick to represent that she had such authority. Mercedes paid Wicked Publicity a total of $127,600 for the use of the billboards.

Three contracts for the billboards were admitted into evidence. Two of the contracts were for the same billboard, which rented for $2,800 per month: the initial contract, and a renewal contract. Another contract was for a second billboard, which rented for $6,000 per month.[1] The contracts stated they were between SignAd and Wicked Publicity. The contracts listed Wicked Publicity as the agency and Mercedes as the client.

The first contract for a billboard rental of $2,800 was signed by Donna Wick on behalf of the agency Wicked Publicity. Bob Milner's name was printed as the client, Mercedes. Milner's signature did not appear on the contract; Wick was listed as "guarantor." The second contract for a billboard rental of $6,000 was signed by Donna Wick on behalf of Wicked Publicity similar to the first contract. Although Mercedes was listed as the client on the contract, no signature or name appears under the client's name. The third contract, a renewal of the $2,800 billboard, originally listed the client as Mercedes-Benz of the Woodlands. Wick crossed out Mercedes' name and wrote in Wicked Publicity. Wick then signed the contract on behalf of Wicked Publicity. All three contracts provided that "For value received, WICKED PUBLICITY hereby promises to pay to the order of SIGNAD, LTD, in Houston,

---

[1] SignAd's representative testified that the actual rental on the billboards was less than the amount listed on the contracts, but the additional amount was a standard commission paid to the agency by the client.

Harris County, Texas, their successors or assigns, the sum of [yearly cost] in monthly installments of [monthly rent]."

Several months into the contracts Wicked Publicity stopped paying SignAd. Wicked Publicity failed to pay a total of $74,600 on the contracts. SignAd sued both Wicked Publicity and Mercedes on the contracts. Wicked Publicity neither answered, nor appeared at trial.

At trial, SignAd introduced three demand letters into evidence that it sent to Wicked Publicity. The recipients of the first two demand letters are listed as Wicked Publicity and Mercedes-Benz of the Woodlands. The only address, however, is one for Wicked Publicity. The third letter, containing the words "Final Demand" was sent only to Wicked Publicity.

Angie Heckel, SignAd's account manager, testified that she did not expect Mercedes to receive the demand letters. Heckel further testified that SignAd never expected payment directly from Mercedes, never received payment directly from Mercedes, and never asked for payment directly from Mercedes. Invoices for the billboards were sent to Wicked Publicity, not to Mercedes.

After SignAd rested Mercedes moved for directed verdict on the grounds that (1) SignAd had not proved actual or apparent authority for Wick to operate as Mercedes' agent; (2) SignAd's quantum meruit claim failed because it proved a valid contract existed; and (3) SignAd could not recover its attorney's fees because Mercedes was a limited liability corporation. The trial court granted directed verdict on actual authority and attorney's fees, but denied directed verdict on quantum meruit and apparent authority. After the bench trial the trial court granted default judgment against Wicked Publicity for breach of contract and awarded damages of $74,600. The trial court further ordered that SignAd take nothing from Mercedes. SignAd appeals the trial court's judgment.

4

In its first issue SignAd asserts the trial court erred in finding that Wicked Publicity was not an agent of Mercedes. Following a bench trial we treat SignAd's issue challenging the trial court's finding as a challenge to the legal sufficiency of the evidence. *See Tendeka, Inc. v. Nine Energy Serv. LLC*, No. 14-18-00018-CV, 2019 WL 6872942, at *4 (Tex. App.—Houston [14th Dist.] Dec. 17, 2019, no pet.) (mem. op.).[2]

## I. Standard of Review and Applicable Law

When, as here, a trial court does not make findings of fact and conclusions of law to support its ruling after a bench trial, we infer all findings necessary to support the judgment. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). The judgment of the trial court must be affirmed if it can be upheld on any legal theory that is supported by the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984); *Burton v. Prince*, 577 S.W.3d 280, 285 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Because the appellate record includes the reporter's and clerk's records, the trial court's implied findings are not conclusive and may be challenged for legal sufficiency. *See BMC Software Belg.*, 83 S.W.3d at 795.

---

[2] SignAd, in its prayer, requested rendition of judgment in its favor. In SignAd's reply brief it re-affirms that it does not seek remand, but only rendition of judgment. Because SignAd did not pray for remand we will address legal sufficiency, but not the factual sufficiency of the evidence to support the trial court's findings. *See* Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 TEX. L. REV. 361, 372 (1960) ("If the language of a point of error leaves a Court of Civil Appeals in doubt as to whether it is a 'no evidence' point, an 'insufficient evidence' point, or a 'preponderance of the evidence' point, the Court should resolve the doubt by looking to the procedural predicate for the point, the argument under the point, and the prayer for relief."). *See also Horrocks v. Texas Dept. of Transp.*, 852 S.W.2d, 498, 498–99 (Tex. 1993) (per curiam) (remanding for new trial after sustaining no-evidence point of error because point was preserved in motion for new trial).

We review the trial court's decision for legal sufficiency of the evidence using the same standard applied in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827.

We sustain a legal sufficiency or "no evidence" challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003); *Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 719 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A party attacking the legal sufficiency of an adverse finding on an issue on which it had the burden of proof must show that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

Texas courts do not presume that an agency relationship exists. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007). Rather, if the existence of an agency relationship or the extent of the authority conferred is at issue, the party making the allegation has the burden of proving it by a preponderance of the evidence. *Id*. To establish an agency relationship, one must show a manifestation of consent by the purported agent to act on the principal's behalf and subject to the principal's control, together with a manifestation of consent by the purported principal authorizing his agent to act. *Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671,

6

697 (Tex. 2017).

**II.   The evidence is legally sufficient to support the trial court's implied finding that Wicked Publicity was not the actual or apparent agent of Mercedes.**

SignAd contends the trial court should have rendered judgment against Mercedes because it conclusively proved that Wicked Publicity signed the contracts as Mercedes' actual or apparent agent thus obligating Mercedes on the contracts. Both actual and apparent authority are created through conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority). *Suarez v. Jordan*, 35 S.W.3d 268, 273 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

**A.   Actual Authority**

Actual authority refers to responsibility a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe she possesses, or (3) by want of due care allows the agent to believe she possesses. *Expro Americas, LLC v. Sanguine Gas Expl.*, LLC, 351 S.W.3d 915, 921 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). In determining whether an agent had actual authority to act for her principal, we examine the principal's words and conduct relative to the agent. *See Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 550 (Tex. App.—Houston [14th Dist.] 2003, no pet.). A finding of actual authority cannot be based merely on the words or deeds of the agent. *Id*.

Actual authority includes both expressed and implied authority. *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Express authority is delegated to an agent by words of the principal that expressly and directly authorize the agent to do an act or series of acts on behalf of the principal. *Expro Americas*, 351 S.W.3d at 921. Implied

7

authority is the authority of an agent to do whatever is necessary and proper to carry out the agent's express powers. *Id*. Implied agency therefore exists only as an adjunct to express actual authority; an agent who does not have express authority cannot have implied authority. *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007).

SignAd asserts, "[t]he face of the contracts clearly show that Wicked [Publicity] signed the contracts on behalf of [Mercedes]." When an agent seeks to avoid personal liability on a contract she signs, it is her duty to disclose that she is acting in a representative capacity and the identity of her principal. *See Latch v. Gratty, Inc.*, 107 S.W.3d 543, 546 (Tex. 2003); *Wright Group Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 200 (Tex. App.—Dallas 2011, no pet.).

Here, the face of the contracts obligate Wicked Publicity to pay for rental of the billboards. Donna Wick signed each of the contracts on behalf of Wicked Publicity, signing one of the contracts as "guarantor," and striking Mercedes' name from the signature line in another contract. None of the contracts discloses that Wick signed the contracts on behalf of Mercedes as agent. If anything, the contracts reflect that Wick signed the contracts on behalf of Wicked Publicity. Milner, as Mercedes' representative, testified that Mercedes never authorized Wick to sign a contract on its behalf or authorized Wick to represent that she had such authority. SignAd presented no evidence to contradict Milner's testimony. Nothing on the face of the contracts reflects that Wick or Wicked Publicity sought to avoid personal liability on the contracts or disclosed that Wick was acting in a representative capacity for Mercedes. SignAd therefore failed to show actual authority as a matter of law. *See Latch*, 107 S.W.3d at 546.

Viewing the evidence in the light most favorable to the challenged finding and indulging every reasonable inference that would support it, as we must, we conclude that SignAd has failed to show actual authority as a matter of law. *See Dow Chem.*

8

*Co.*, 46 S.W.3d at 241.

**B.    Apparent Authority**

Apparent authority is the power of an agent to affect the legal relations of the principal by transactions with a third party. *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984). An agent acting within the scope of her apparent authority binds the principal as if the principal itself had taken the action. *Id*. Apparent authority is based on estoppel, and only the conduct of the principal in leading a third party to believe that the agent has authority may be considered. *Gaines*, 235 S.W.3d at 182; *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996). Declarations of authority by the alleged agent, without more, do not establish either the existence or the scope of the alleged authority. *Gaines*, 235 S.W.3d at 183–84. Rather, the reviewing court looks to "acts of participation, knowledge, or acquiescence by the principal." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998). Without the principal's participation—either through its acts, or knowledge of and acquiescence in acts of the agent—no mere combination of circumstances, including acts of the purported agent that may mislead persons into a false inference of authority, however reasonable, will serve as the predicate for apparent authority. *Expro Americas*, 351 S.W.3d at 925.

Apparent authority arises either from (1) a principal knowingly permitting an agent to hold herself out as having authority, or (2) a principal's actions that lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority she purports to exercise. *Gaines*, 235 S.W.3d at 182. The applicable standard is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority. *Id*. at 182–83. A party seeking to recover under an apparent-authority theory must show justifiable reliance on the principal's words or conduct resulting in harm to the party.

*Expro Americas*, 351 S.W.3d at 925. Further, the party must show that the principal had full knowledge of all material facts at the time of the conduct alleged to be the basis for the apparent authority. *Gaines*, 235 S.W.3d at 182.

A third party's "good faith" belief that one person is the agent of another is not sufficient to demonstrate the person's authority to bind the principal. *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 783 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Instead, the principal must communicate to the third party or take some action indicating that the person is authorized to act as an agent. *Gaines*, 235 S.W.3d at 182. The principal's "acts" include participation, knowledge, or acquiescence. *Morris*, 981 S.W.2d at 672. A party dealing with an agent must ascertain both the fact and the scope of the agent's authority, and if the party deals with the agent without having made such a determination, the party does so at its own risk. *Suarez*, 35 S.W.3d at 273.

With regard to Wick's apparent authority, SignAd relied on the following:

- Milner's initial online contact with SignAd;
- An email from Milner to Ava Wick at Wicked Publicity in which Milner said he thought the SignAd billboard had better visibility;
- An email from Donna Wick to Milner saying that Stacey Laycock, at SignAd remembered speaking with Milner; and
- SignAd's proposal to Milner after his initial online contact.

SignAd also relied on an email exchange between Wick and Milner in which Wick offered to instruct SignAd to "get the paperwork ready with my firm holding the paper . . . is that what you want?" Milner responded, "Why don't [you] hold the contract and let's contract to begin April 1 (if they want us to contract earlier I may be willing to do that)." In another email exchange Wick responded to Milner, "Very fine Bob . . . once I fill out the contract they have to approve etc. When we are all ready, set go then I will process payment and send along a receipt." Milner

10

responded, "That's fine – I suspected as much. Please proceed with you holding the paper."

SignAd argues the above email exchanges are evidence that Milner clothed Wick with the indicia of authority to sign the contracts on behalf of Mercedes. Mercedes argues the opposite: that Wick was to contract with SignAd, and Mercedes was subleasing from Wick.

The evidence at trial supported the trial court's implied finding that Wick did not have apparent authority to bind Mercedes to the contracts with SignAd. Stacey Laycock, SignAd's corporate representative, testified that after the initial email inquiry from Milner, Wick was her sole contact. Laycock testified that although SignAd asked for an agency of record letter it never obtained one. According to Laycock, the agency of record letter would have recorded Wick's authority to bind Mercedes to the contract. Heckel also testified that SignAd never expected payment from Mercedes or sent a demand letter to Mercedes. A party dealing with an agent must ascertain both the fact and the scope of the agent's authority. *Suarez*, 35 S.W.3d at 273. By dealing with Wick and Wicked Publicity exclusively without obtaining authority to bind Mercedes, SignAd did so at its own risk.

Viewing the evidence in the light most favorable to the trial court's finding, we conclude SignAd did not conclusively establish apparent authority. We overrule SignAd's first issue.

## III. Having obtained a breach-of-contract judgment against Wicked Publicity, SignAd cannot recover under quantum meruit on appeal.

In SignAd's second issue it asserts that if Wicked Publicity was not Mercedes' agent the trial court erred in finding the advertising contracts were valid and enforceable. In SignAd's third issue it asserts that if there were no valid enforceable contracts SignAd was entitled to recover in quantum meruit.

11

The Texas Supreme Court has defined quantum meruit as "an equitable remedy that is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (internal quotation marks omitted). A party generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished. *Id.* at 740. Specifically, "[a] plaintiff seeking to recover the reasonable value of services rendered or materials supplied is precluded from recovering in quantum meruit if there is an express contract *that covers those services or materials* and if no exception to the general rule applies." *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 462 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing *Hester v. Friedkin Cos., Inc.*, 132 S.W.3d 100, 106 (Tex. App.—Houston [14th Dist.] 2004, pet. denied)) (emphasis in original). Such exceptions include: (1) when a plaintiff partially performs a contract, but the defendant's breach prevented the plaintiff from full performance or the partial performance was not otherwise the fault of the plaintiff; (2) when the contract is unilateral or otherwise unenforceable (such as when it is entered into by an unauthorized agent); and (3) when a plaintiff in a construction contract breaches, she may be able to recover the reasonable value of services (less any damages suffered by the defendant), if the defendant accepts the benefits of that partial performance. *Truly v. Austin*, 744 S.W.2d 934, 936–38 (Tex. 1988).

SignAd asserts the second exception applies because the contracts were otherwise unenforceable having been signed by an individual not authorized to represent Mercedes. To recover for breach of contract, a plaintiff must show (1) existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result of the defendant's breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling,*

12

*Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019); *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The elements of a valid contract are (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) meeting of the minds, (4) a communication that each party consented to the terms of the contract, (5) execution and delivery of the contract with intent it become mutual and binding on both parties, and (6) consideration. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see also Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (citing *Angelou* for proposition that evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind).

In other words, SignAd argues that it is entitled to recover under quantum meruit because the contracts were unenforceable. Contrary to SignAd's argument, the record reflects the contracts were enforceable and expressly covered the services and materials provided by SignAd. Uncontroverted evidence established that Wick, representing Wicked Publicity, signed contracts with SignAd to lease two billboards. The contracts bound Wicked Publicity to pay for the billboards. SignAd sued Wicked Publicity and Mercedes for breach of contract. SignAd obtained default judgment against Wicked Publicity for breach of contract and damages in the amount of $74,600, the total amount owed. It is undisputed that the contracts Wicked Publicity breached cover the same services and materials for which SignAd now argues it is entitled to recover under quantum meruit. SignAd has not challenged the portion of the judgment finding Wicked Publicity breached the express contracts; therefore, SignAd accepted the benefits of the trial court's judgment against Wicked Publicity. The uncontroverted facts satisfy the above mentioned elements for breach of contract.

Having successfully asserted a breach-of-contract action against one party, SignAd cannot, on appeal, argue the same contracts were not valid or enforceable against another party. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) (stating that "a party cannot complain on appeal that the trial court took a specific action that the complaining party requested."); *see also Fields v. Houston Indep. Sch. Dist.*, 14-19-00010-CV, 2020 WL 6073758, at *8 (Tex. App.—Houston [14th Dist.] Oct. 15, 2020, no pet.) (mem. op.).

Under the doctrine of invited error, a party that requests a specific action in the trial court cannot complain on appeal that the trial court committed error in granting the request. *Houston Laureate Associates, Ltd. v. Russell*, 504 S.W.3d 550, 567 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Here, it is undisputed that SignAd sued Wicked Publicity and Mercedes for breach of contract. It is also undisputed that the trial court awarded judgment for breach of contract against Wicked Publicity in SignAd's favor. Having successfully moved the trial court for judgment on the contracts, under the doctrine of invited error, SignAd cannot be heard to complain that the contracts are not enforceable. *See id.*

SignAd argues that the invited error doctrine does not apply to this appeal because it was entitled to default judgment against Wicked Publicity and it does not complain of that judgment. The judgment against Wicked Publicity is one for breach of contract. SignAd cannot successfully request the trial court to render judgment on breach of contract then complain on appeal that the same contract was unenforceable. *See id.* SignAd relies on the supreme court's decision in *Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) to argue that "[a] plaintiff is entitled to elect its remedy and take the most beneficial recovery."

The one-satisfaction rule prevents a plaintiff from obtaining more than one recovery for the same injury. *Id.* "The rule applies when multiple defendants commit

the same act as well as when defendants commit technically different acts that result in a single injury." *Christus Health v. Dorriety*, 345 S.W.3d 104, 114 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). The one-satisfaction rule is typically employed in multiple defendant cases in which some, but not all, defendants settle before trial. In those situations: "the non-settling defendants [are] entitled to offset any liability for joint and several damages by the amount paid by settling defendant." *Buccaneer Homes of Ala. Inc. v. Pelis*, 43 S.W.3d 586, 590 (Tex. App.—Houston [1st Dist.] 2001, no pet.). But it also requires plaintiffs to elect damages when one defendant is found to be liable for an indivisible injury under several theories or causes of action. *See, e.g., American Baler Co. v. SRS Sys., Inc.*, 748 S.W.2d 243, 244 (Tex. App.—Houston [1st Dist.] 1988, writ denied) (requiring a plaintiff to elect between damages for fraud, breach of contract, negligent misrepresentation, and DTPA violations because they each related to a single, indivisible injury). The one-satisfaction rule does not apply in cases such as this one where one defendant has been found liable for breach of contract, but the other defendant was not found to have entered into the contract. SignAd has an unchallenged judgment against Wicked Publicity for breach of contract; it cannot now complain that the contract is unenforceable.

Because an enforceable contract covers the materials and services from which SignAd attempts to recover, it cannot recover under a quantum meruit theory. *See Hester*, 132 S.W.3d at 106 (a plaintiff seeking to recover the reasonable value of services rendered or materials supplied is precluded from recovering in quantum meruit if there is an express contract that covers those services or materials and if no exception to the general rule applies). We overrule SignAd's second and third issues on appeal.

15

**IV.** **We need not address SignAd's "crosspoint" asserted in its reply brief.**

In SignAd's reply brief it asserts a "crosspoint" as follows:

Does the fact that the contracts are addressed to both "WICKED PUBLICITY" and "MERCEDES-BENZ OF THE WOODLANDS" and designate Wicked Publicity as the "AGENCY" establish, within the four corners of the contract, that Appellant intended to bind Appellee to payment under the contract?

To the extent SignAd attempts to raise a new issue in its reply brief that was not raised in its opening brief we need not address the issue. We generally do not consider issues raised for the first time in a reply brief. *See HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*, 565 S.W.3d 799, 812 n.10 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 672 n.5 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Yeske may not raise a new issue in his reply brief that was not discussed in his original brief, even if the new issue is raised in response to a matter in the appellee's brief but not raised in the appellant's original brief.")). We therefore decline to address SignAd's "crosspoint" raised in its reply brief.

## CONCLUSION

Having overruled SignAd's issues on appeal we affirm the trial court's judgment.

/s/     Jerry Zimmerer
Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain (Bourliot, J. concurring without opinion).

16